## Trimble *versus* Reis *et al.*

### Conversion of Wife's Real Estate.—Release of Wife's Securities by Husband.

1. A husband and wife, by joint deed, sold and conveyed part of her real estate, and took a mortgage in their joint names to secure the payment of the purchase-money. The husband released the mortgage without the wife's consent: *held,* that, under the Act of 1848, the mortgage was the separate property of the wife, and that the release of the husband, without a consideration that would legally amount to a payment of the mortgage, did not bind her.

2. Though a mortgage, on the conversion of the wife's real estate into money, be taken in the names of both husband and wife, it will not be inferred from the form of the security, that the wife intended to give any portion of her property to her husband. This would require a distinct transaction, of which, under the Act of 1848, there must be express evidence.

Error to the District Court of *Allegheny county.*

This was a *scire facias* on a judgment by George Trimble and Jane D. Trimble his wife, for the use of said Jane against Henry Reis, John Wilson, and Leopold Sahl. The judgment was recovered on a mortgage given to plaintiffs by Henry Reis, by whom portions of the mortgaged premises had been sold to the other defendants, Sahl and Wilson.

The case was this: On the 25th of March 1846, the widow and heirs of William Peebles deceased conveyed to George Trimble and Jane D. his wife (who was a daughter of said deceased), two tracts of land in Peebles township, containing 57 acres and 93 perches, being a portion of the real estate of said deceased. The deed set forth that William Peebles had died intestate, seised, partly in his own right, and partly in right of his wife Barbara, of a certain tract of land, containing upward of 200 acres, in Peebles township; that before his death and with the consent of his wife Barbara, he had divided the said tract into five shares, and designated and allotted one share to each of his five children, *reserving and charging on each share* a distinctive sum payable by way of annuity to his wife Barbara Peebles, in lieu of dower and of her interest in the land; that the parties to the deed, being desirous of carrying out the wishes of the deceased, and in pursuance of the above-mentioned division, thereby released and confirmed unto George Trimble and Jane D. Trimble, their heirs and assigns, the share allotted to Mrs. Trimble by her father in his lifetime, excepting and reserving the annuity of $56 rents to Mrs. Barbara Peebles for life, to be collected as rents are collected in this Commonwealth.

Previous to the execution of this deed, but after the death of Mr. Peebles, articles of agreement, containing substantially the

same recitals, with the promise of Mr. and Mrs. Trimble to pay this amount of $56, had been entered into and recorded.

On the 31st of July 1851, plaintiffs conveyed to Henry Reis 10 acres and 82 perches of this land for $3500, and took from him a mortgage thereon to secure $3000 of the purchase-money in instalments, payable as follows, to wit, $500 April 1st 1852, $1000 April 1st 1853, $1000 April 1st 1854, and $500 April 1st 1855, with interest from April 1st 1852.

On the 18th of March 1852, Henry Reis conveyed five acres of the mortgaged premises to John Wilson for $1400, of which $300 was paid in cash, and the balance secured by a judgment-bond and mortgage on the portion purchased by Wilson. On the 2d of July 1852, Reis sold the residue of the property to Leopold Sahl, who paid $1200 in cash, and gave bond for the payment of $400 in August 1853, and $400 in August 1854, which bond was secured by a mortgage on the portion purchased by Sahl.

To No. 230 of January Term 1857, of the District Court, the plaintiffs sued out a writ of *sci. fa.* on their mortgage to recover the sum of $1500, with interest from April 1st 1858, being the balance then due and unpaid. This writ was served upon Henry Reis, the mortgagor, and upon John Wilson, one of the terre-tenants. On December 13th 1858, judgment for want of an appearance was taken against Henry Reis, and the amount liquidated at $2013. Same day, the plaintiffs discontinued as to John Wilson, the terre-tenant summoned.

The plaintiff thereupon, to January Term, No. 198, 1859, sued out this writ of *sci. fa. quare ex non* on the above judgment, with notice to the terre-tenants, John Wilson and Leopold Sahl. The defendant, Henry Reis, failed to appear, but the terre-tenants appeared, and filed affidavits of defence and pleas.

In support of the issues thus raised, the plaintiffs put in evidence their judgment of December 13th 1858, against Henry Reis, and the mortgage on which that judgment was taken, followed with proof that Wilson and Sahl were in possession of respective portions of the tract covered by the plaintiff's mortgage, under conveyances from Henry Reis, and then rested.

Leopold Sahl, one of the terre-tenants defending, then put in evidence the deed of March 25th 1846, from Mrs. Barbara Peebles and others to the plaintiffs; the agreement before mentioned, bearing date March 29th 1844; and a release of the premises occupied by him (Sahl) from the lien of Reis's mortgage to the plaintiffs, purporting to have been executed on the 5th April 1853, by George Trimble, one of the mortgagees; together with evidence tending to prove payment and satisfaction of his bond and mortgage to Reis, before the service of the present writ, and then rested.

1 Wr.—29

[Trimble *v.* Reis *et al.*]

Wilson, the other terre-tenant defending, also put in evidence and relied upon the release by George Trimble to Sahl, claiming that it enured to his benefit as prior purchaser. He also put in evidence, as proof of payment of his purchase-money, his bond and mortgage to Reis, an assignment of the same by Reis to W. R. Phelps for the use of G. H. Rupert & Co., a judgment on the same, obtained on the 2d March 1857, No. 720, July Term 1855, in the District Court of Allegheny county, and satisfaction on this judgment entered on the 8th of April 1857, in pursuance of a power of attorney dated March 24th 1857, given to A. H. Miller, Esq., by G. H. Rupert & Co. The defendants then rested.

The plaintiffs then offered as rebutting testimony, the affidavit of defence filed by John Wilson to the present writ of *scire facias*, bearing date December 31st 1858, in which it is stated that his defence consisted in the facts, that at the time he purchased from Reis he had left enough property in Reis to pay off the Trimble mortgage; that prior to the service of this writ he had paid the whole amount of the purchase-money; and that on the 5th of April 1853, George Trimble had released from the lien of the mortgage, all that part of the ground which had remained in the hands of Reis after the sale to him (Wilson).

The plaintiffs next offered in evidence, the affidavit of defence filed by John Wilson in No. 230, January Term 1857, wherein it is set forth that Wilson's defence to the *sci. fa.* sued out in that case, consisted in the facts that at the time he had purchased from Reis he had left enough property in the hands of Reis to pay the Trimble mortgage; that his bond and mortgage to Reis had by assignment become the property of G. H. Rupert & Co., who had instituted suit against him on the bond; that subsequent to the bringing of the said suit by Rupert & Co., and previous to the issuing of the *sci. fa.* in No. 230, January 1857, he, Wilson, had made an arrangement with Rupert & Co. by which they agreed to take from him in liquidation of the said judgment a tract of land in Illinois, for which he had executed a deed to them, which was at this time in the hands of William R. Phelps, their agent, lodged with him for their use, to be delivered up on their entering satisfaction or on releasing the said bond; and that on April 5th 1853, George Trimble had released the portion of the mortgaged premises that had remained the property of Reis at the time of Wilson's purchase. This affidavit was made and filed on the 13th January 1857.

The plaintiffs further put in evidence the docket entries in the suit of Reis for use of Rupert & Co. against Wilson, at No. 720, July Term 1855, whereby it appeared that on the 28th June 1855, judgment had been confessed on Wilson's bond to Reis, in favour of Reis for use of Rupert & Co., for the sum of $1732.25;

[Trimble *v.* Reis *et al.*]

that subsequently Wilson applied to the court to open this judgment and let him into a defence, and that the court, on the 29th December 1855, opened the judgment, and let Wilson into a defence.    It further appeared by the docket entries, that on the 2d March 1857, by leave of court, the affidavit of Wilson, in which he had sworn that he possessed a just and true defence to the bond, and all the pleas filed by him subsequently to the opening of the judgment, except the pleas of payment and set-off, were withdrawn, and that, on the same day, a jury was sworn and a verdict rendered against Wilson for $1913.

The plaintiffs then proved by the prothonotary that search for the papers filed in No. 720, July Term 1855—the suit of Reis for use against Wilson—had been made, and that the only papers to be found were the *narr.*, a copy of the bond, and a power of attorney to satisfy the judgment; and that the rest of the papers, namely, Wilson's affidavit and the pleas, were not to be found.

The plaintiffs then called A. H. Miller, Esq., the present counsel of Wilson, who had acted as counsel for the plaintiffs in the suit of Reis for use against Wilson, who testified that he had in his possession the missing pleas and affidavit of Wilson, which had been sent to him a day or two before by Judge Shaler, Wilson's former attorney.    The witness also stated that the plaintiffs in the said case of Reis for use against Wilson, had been prepared to prove that Wilson had been present at the assignment by Reis of Wilson's bond to the plaintiffs, and had been silent as to the existence of any defence thereto ; and that the affidavit and pleas had *therefore* been withdrawn by Wilson's counsel.

The plaintiffs then put in evidence the missing affidavit and pleas produced by the last witness.    In this affidavit, dated 30th day of June 1855, Wilson swore that he had a good defence to the bond, and that his defence consisted in the facts that the bond sued on had been given by him to Henry Reis in payment of a certain piece of land ; that Reis had covenanted with him that the land was free of encumbrances ; that in truth and in fact the land was encumbered by a mortgage to George and Jane D. Trimble for an amount exceeding the amount due on the bond sued on ; and that the beneficial plaintiffs had taken and held the bond subject to the equities existing between Wilson and Reis.    There was a special plea in which the same defence was set up.    This was the affidavit, and this the plea, which were withdrawn on the day of the trial of the cause of Reis for use *v.* Wilson.    There appeared to have been no testimony whatever offered on behalf of the defendant Wilson in the trial of that cause.

The plaintiffs then rested, and the defendant Wilson recalled his attorney, A. H. Miller, Esq., who testified that he had entered

[Trimble *v.* Reis *et al.*]

satisfaction on the judgment against Wilson in the suit of Reis for use against Wilson, in pursuance of a power of attorney from his clients, Rupert & Co., who were brokers in Peoria, Illinois. The defendants also called Hon. Charles Shaler, who testified that he had acted as attorney for Wilson in the suit of Reis for use against Wilson; that so far as he could remember, he had not withdrawn the papers at the instance of Wilson, but he presumed, because they were satisfied, that the defence could not be made out.

Both parties then rested; and the plaintiffs requested the court to charge the jury:—

1. That the defendants have failed to establish a valid defence to the action, and the verdict should be for the plaintiffs.

2. That George Trimble had no power or authority to execute a release of Reis's mortgage to the plaintiffs, and such release constitutes no defence to this action.

3. If the last instruction is refused, then to charge the jury that the release to Sahl could only have the effect of discharging the land owned by Wilson to the extent of actual *bonâ fide* payments made by him to Reis or his assignees, before he had notice of Sahl's release.

4. That the defendant, Wilson, had a legal and equitable defence to the bond given by him to Henry Reis, and not having given notice to the plaintiffs in the present action of the proceedings against him on the bond, and notified them to intervene and take defence thereto, he is now precluded from setting up the judgment on the bond and satisfaction thereof, as a defence to this action, without showing that he had no available defence, which he has failed to do.

5. That if the jury believe that the verdict and judgment in the case of Reis for use against Wilson were obtained by collusion between Wilson and the beneficial plaintiffs, then neither the said judgment, the satisfaction thereof, nor the surrender of the bond and mortgage, constitute a defence to this action.

6. That the withdrawal of the affidavit and pleas by the defendant, Wilson, in the case of Reis for use against Wilson, and the suffering a judgment to be taken against him, were done in his own wrong, and as matter of law, he cannot now resort to the said judgment as constituting a defence to the present action.

7. That the arrangement set up in the affidavit of John Wilson, in No. 230, January Term 1857, as having been made between him and Reis's assignees, was not such a payment or satisfaction of his purchase-money as to avail as a defence to the present action.

The court below answered all the plaintiff's points in the negative, and charged that the release of Trimble discharged not only

[Trimble v. Reis et al.]

the land of Sahl, but also operated as a discharge to the land of Wilson, and that the verdict of the jury should therefore be in favour of the defendants.

The jury found accordingly, and judgment being entered on the verdict, the plaintiff sued out this writ, and assigned for error the refusal by the court to charge as requested in the points submitted; in charging the jury that the release of Trimble discharged not only the land of Sahl, but also operated as a discharge of the land of Wilson, without leaving it as a question of fact to the jury, whether at the time of the execution of said release Trimble had notice of the prior sale by Reis to Wilson; and in not charging the jury that the release of Trimble to Sahl would not enure to the benefit of Wilson, unless Trimble was aware of the intention of the latter to claim and rely upon the equity arising out of his position as prior vendee, and that no evidence of such knowledge on the part of Trimble having been shown by Wilson, the jury should find for the plaintiffs as against the defendant, Wilson.

*H. Hepburn & Co.* and *Hamilton & Acheson*, for plaintiff in error.—Since the Act of 1848 the vendee of a mortgagor cannot protect his land against the mortgage of a married woman, by setting up a release executed by the husband. The whole intent and spirit of the act forbids it: Pettit v. Fretz's Executors, 9 Casey 121; Bean's Administrator v. Bear, Id. 527; Roseberg's Executor v. Sterling, 3 Id. 293. The fact that the husband was joined in the mortgage cannot change the case, for this joinder gave him no interest in the security, if he had none in the land; and he gained none by being joined in the deed from the widow and heirs of Mr. Peebles, which was simply a partition among heirs; nor by his personal obligation in the agreement to pay Mrs. Peebles's annuity, for that was merged in the deed.

Even if the release to Sahl were good it does not enure to the benefit of Wilson, unless it was executed with a knowledge, on the part of Trimble, that Reis had previously sold to Wilson the rest of the land covered by the mortgage, and had been notified by him that he had paid the purchase-money, and cautioned to do no act to jeopard the prior vendee: Taylor's Executor v. Maris, 5 Rawle 56; Chessborough v. Millard, 1 Johns. Ch. 430; Neinceweiz v. Gahn, 3 Paige Ch. Rep. 651.

It does not appear that Wilson paid the purchase-money, but if it did so appear it was done with a knowledge that the plaintiff claimed to hold his land under their mortgage, and he is therefore not entitled to claim the benefit of the release.

Merely securing a payment is not enough: Bolton v. Johns, 5 Barr 151; Rogers v. Hall, 4 Watts 359; Jewett v. Palmer, 7 Johns. Ch. R. 65. The judgment which he allowed to go against

[Trimble *v.* Reis *et al.*]

him was not such a payment of the purchase-money as would give him the character of a *bonâ fide* purchaser for value against a prior encumbrancer. The mortgage of Trimble and wife was notice to his assignees, and could not be injured by his laches or fraud. He had a good defence to the suit on his bond, and the fourth and sixth points should have been affirmed on the trial.

*A. H. Miller & Jas. J. Kuhn*, for defendant in error, contended that the release of Trimble was valid. He was joint owner with his wife, under the agreement of March 29th 1844, by which Trimble was bound to pay $56 of the widow's amount, allow her to retain her deceased husband's chattels, and unite with the other heirs in paying decedent's debts. This gave him an interest in the land conveyed to them in pursuance of it: Bachman *v.* Chrisman, 11 Harris 162; Burson's Appeal, 10 Harris 164. The Act of 1848 is inapplicable, for the parties were married in 1844, at which time his interest vested.

The mortgage was only a security which he had power to release: Wilson *v.* Shoenberger's Heirs, 7 Casey 295; Craft *v.* Webster, 4 Rawle 255; Robb *v.* Beaver, 8 W. & S. 110; Pratt *v.* Lewis, 4 Whar. 22–25; Lodge *v.* Hamilton, 2 S. & R. 493. Wilson, as first purchaser from Reis, had an equity which Trimble was bound to respect, and this without request, if he knew of it. In Taylor's Executors *v.* Maris, 5 Rawle 56, cited by the plaintiff in error, there was want of notice, not want of request. Paxton *v.* Harrier, 1 Jones 312, is like this case. Trimble had this knowledge; the release shows it. The land thus released by him is more than sufficient to pay the balance due on the mortgage, and if Wilson has paid for his land, he is discharged by this act of Trimble.

The evidence shows that he has paid in good faith, and ought not to suffer the consequences of an improper and wrongful act of one of the plaintiffs, to which he never consented, and of which no notice was given to him.

The opinion of the court was delivered, January 7th 1861, by

LOWRIE, C. J.—Judging, from the face of the deed from Peeble's widow and heirs to Trimble and wife, we cannot doubt that it was intended merely as a deed of partition, and that though made to both, it did not change the wife's title, but only parted it from the shares of her co-heirs, and charged it as it ought to be, in favour of the widow.

Trimble and wife joined in a sale of a part of her share, and took a mortgage to them both to secure the payment of the purchase-money, so declared in the mortgage. Thus the wife's title became changed from realty into personalty, and of course her

[Trimble v. Reis et al.]

husband's courtesy, which was an incident of it as realty, fell. But was this personalty thereby appropriated to the husband?

Here we need the help of the Married Woman's Act of 1848, rather than the principles expressed in cases decided before that. It secures the title of a wife's real and personal property to herself, and saves it during her lifetime from any title by operation of law in her husband, so that it shall not be liable for his debts, or be sold, conveyed, transferred, or encumbered by him without her consent in writing, and duly acknowledged. Having sold her land, the proceeds, of course, are hers under the act, unless there be some adequate evidence that she has intentionally parted with them. If an agent had sold it for her, and taken the securities in his own name, they would have been hers, and he might be required to assign and deliver them to her. Whatever their form, they would in equity be her property.

So here, the proceeds being hers, the securities for them are hers. The title sold, stood in form in their joint names, and therefore, and even without this, it was quite natural that the securities should be in their joint names, and he would act and sue for her in collecting the money. If the price had been paid in money, and she had given it to him, his possession of it would be sufficient evidence of his ownership, so that we could not reclaim it for the wife against bonâ fide holders from him; and, besides, money is not intended to be individuated and followed. But here is the very thing that was given for her land, and we do not see that she has done anything showing an intention to part with her title to it.

We must not attach too much importance to the fact that the mortgage is to the husband and wife, nor imply anything from that, that is not supported by the nature of the transaction. The purpose of the mortgage was to secure the conversion of the wife's land into money, and it was no part of the transaction that the wife should give any of her property to her husband. This would require a distinct transaction, of which there is no evidence, and we cannot imply it from the form of the securities; for the Act of 1848 requires express evidence of it.

The defendants must be treated as knowing that this land was the wife's, and that the mortgage was given to secure the payment of the purchase-money, for the papers show this. They were therefore bound by the Act of 1848 to know that the mortgage was hers, and that it could not be released by her husband without a consideration that would legally amount to a payment of it. This simple release imports none such, and none is proved, and therefore it does not bind her.

There is no force in the objection that he is a party plaintiff. He is only formally so, and is not allowed to refuse the use of his name in protection of his wife's rights. He has not the

[Trimble *v.* Reis *et al.*]

power of a common law party to defeat the suit to the prejudice of his co-party; for his power is modified by the Act of 1848.

These views cover the whole case as between the plaintiffs and defendants, and we prefer not to express any opinion on the other questions, as they relate only to the rights of the defendants in relation to each other.

Judgment reversed, and new trial awarded.