Matthews Estate.

Argued May 1, 1968. Before Bell, C. J., Musman-no, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

618

*Joseph Rappaport,* with him *Rappaport, Furman &* *Gianopoulos,* for widow, appellant.

*Leonard Levin,* with him *Levin, Levin & Levin,* for nephew, appellant.

*Littleton W. Roberts, Jr.,* with him *Harold D. Greenwell* and *James F. Swartz,* for accountant, appellee.

OPINION BY MR. JUSTICE JONES, October 3, 1968:

James Z. Matthews (decedent), a resident of Delaware County, died testate on March 10, 1961, survived by his wife, Levanta Matthews. By his will, decedent devised and bequeathed his residuary estate[1] to the Central-Penn National Bank in trust for the following purposes: one share to be held in trust for his widow for life and the other share in trust for his nephew, Theotokis Matthews for life; upon the death of either the widow or the nephew, the income from both shares was to be paid to the survivor; upon the survivor's death, the principal was to be paid to the nephew's issue.

Decedent's widow elected to take against the will and one-half of the estate became distributable to her free of the testamentary trust and the other one-half

---

[1] Assets passing under the will were valued at $107,000.00. For Federal estate tax purposes, the estate was valued at an additional $350,000 because of assets jointly held by decedent and his wife as tenants by the entireties.

of the estate will be held in trust for the nephew for life with remainder to his issue.

When the personal representative's account was filed, exceptions to the account were filed both by the widow and the nephew. After two days of hearing before the Orphans' Court of Delaware County, the court appointed Walter Strine, Jr., Esq., as master and auditor to take testimony, hear legal arguments and recommend findings of fact and conclusions of law with respect to the exceptions.

Only several of the exceptions are before this Court. These exceptions are: (1) the failure of the personal representative-accountant to include among estate assets an additional sum of $53,600 received by decedent shortly before his death in connection with the sale of his partnership interest in a tavern-restaurant business; (2) the allowance of a credit to the personal representative-accountant for the payment to one Steven Zenokis, a claimant to the fund, of the balance in a bank account held in decedent's name; (3) the allowance of a credit to the personal representative-accountant for payment of income tax deficiencies for the years 1954, 1955 and 1957 (totalling $4,522.44) and a fee to an accountant for services rendered in the income tax matter. The master recommended, and the court adopted such recommendation, that exceptions (1) and (2) supra, be dismissed and that exception (3) be sustained. Upon the entry of a final decree, both the widow and the nephew filed the appeals presently before this Court.

### Appeal of Levanta Matthews (The Widow)
### (No. 94 January Term 1968)

The final decree in the court below was entered on June 9, 1967 and Levanta Matthews filed a timely ap-

peal on August 2, 1967 and gave notice of said appeal, under Rule 63 of this Court, on August 22, 1967. However, the writ of certiorari issued by this Court was not lodged in the court below until May 8, 1968, *eight and one-half months after the appeal was filed and seven days subsequent to oral argument of the appeal.*

While appellant did *file* her appeal within the statutory period, she failed to perfect her appeal within a reasonable time after the date of her appeal by lodging the writ of certiorari in the court below. See: *Dziengielewski v. School District*, 314 Pa. 24, 170 A. 268 (1934); *Fenerty Disbarment Case*, 356 Pa. 6̃4, 616-618 inc., 52 A. 2d 576 (1947); *Hodge v. Me-Bee Co. Inc.*, 429 Pa. 585, 589, 240 A. 2d 818 (1968); *Miller Appeal*, 188 Pa. Superior Ct. 198, 199, 200, 146 A. 2d 343 (1958).

Since the writ was not lodged in the court below until eight and one-half months after the appeal was filed and then only after the delinquency was called to counsel's attention at oral argument of this appeal, we have no other recourse than to quash this appeal.

Appeal of Theotokis Matthews and John J. Donohue[2]

Decedent and two other persons were partners in the ownership and operation of a tavern-restaurant which was conducted on premises owned by decedent and his wife as tenants by the entireties. At the time in question, the partnership leased the premises from decedent and his wife under a written lease which provided for a gross rental of $7200 annually and at the time in question had ten years to run.

About six months before his death, negotiations commenced between the decedent and his two partners looking toward the sale by the former to the latter of

---

[2] Guardian ad litem for issue of nephew, born and unborn.

decedent's partnership interest. After lengthy nego-
tiations, an agreement finally was reached whereby de-
cedent would be paid $46,400 and the existing lease
for the premises cancelled and a new 30 year lease en-
tered into at a gross rental of $11,866 annually, a net
increase over the rental in the previous lease of $4,666.

Upon decedent's death, the widow, as surviving ten-
ant by the entireties, claimed that all the future in-
creased rent belonged to her and not to the estate. The
master recommended and the court below decreed that
the increased rent belonged to the widow and was not
an estate asset on the ground that a presumptive gift
thereof from decedent to his wife had been established.

The master found as a fact that: "The initial con-
templated price for the sale of decedent's partnership
interest was $100,000.00 and much of the increase in
rental under the lease was attributable to the consid-
eration received for decedent's sale of his partnership
interest, although the exact amount so attributable was
not established." Such finding was approved by the
court below. In *Watt Estate*, 409 Pa. 44, 50, 185 A.
2d 781 (1962), we said that: ". . . findings of fact of
an auditor, confirmed or approved by the court below,
will not be disturbed on appeal except for clear error
or unless unsupported by the evidence: [citing authori-
ties]. However, this rule has no application where the
findings are only inferences or deductions from other
facts or conclusions from reasoning [citing an authori-
ty]." See also: Standard Penna. Practice, Vol. 9 (Re-
vised), Ch. 40, §119 and authorities therein cited. Cf.
*Miller's Estate*, 279 Pa. 30, 123 A. 646 (1924).

From our reading of this record, we are convinced
that the factual finding that the initial price contem-
plated for the sale of the partnership interest was
$100,000 and that, although the agreement for the sale
recited a consideration of $46,400.00, the entry into a

new lease with an increased rental was part and parcel of the total consideration bargained for and received by the decedent is fully supported by the evidence.

When analyzed, the transaction appears simple and free from difficulty. Decedent alone owned an interest in the partnership which he wanted to sell, initially at least, for $100,000. Lengthy negotiations with his two partners ensued. The two partners finally agreed to a payment to decedent of $46,400 of which $21,400 was paid in cash and a promissory note given for $25,000. It was to the interest of the purchasing partners to insure, for as long as possible, the use of the premises for their tavern-restaurant business and, under their extant lease, they had only ten years of assurance of such use. It was to decedent's interest, decedent being about to retire from business activities, to increase the income from the leased premises. The property leased was owned by himself and his wife, as tenants by the entireties, and any change in the lease would be a matter for them *jointly*.

The new lease which the parties entered into was vastly different from the lease then in existence. The old lease had 10 years to run, whereas the new lease had 30 years to run, thus providing a benefit to the purchasing-partners in assuming them greater longevity in the use of the premises; the old lease called for a gross rental of $7200, the new lease a gross rental of $11,866 or an increase of $4,666 annually thus providing a benefit not only to decedent but to his co-tenant by the entireties; the new lease granted rights to the lessee not provided in the old lease—restrictive covenants as to use of adjoining land "owned by decedent and wife" for a restaurant, grant of a right of way to lessees over the adjoining land and the right of assignment of the lease. The extended term of the lease and the grant of the additional rights not only

justified the increase of the rental but to the purchasing partners enhanced the value of that which they were purchasing from decedent. The purchase of the partnership interest and the new lease were all part and parcel of the same "ball of wax."

An alteration of the old lease terms and any extension of its terms required the cooperation of decedent *and* his wife because it was their, not his, property. When, as found by the master and confirmed by the court below, decedent, as part of the consideration for the sale of his partnership, agreed to accept an increased rental, he presumptively gave his interest in the increased rental to his wife who, upon decedent's death, became entitled, as the surviving tenant by the entireties, to the entire increased rental for the term of the lease.

Neither *Uccellini v. Uccellini*, 423 Pa. 273, 223 A. 2d 694 (1966), nor *Trimble v. Reis*, 37 Pa. 448 (1861), relied upon by appellant, is apposite to the case at bar.

We, therefore, conclude the personal representative-accountant properly excluded the increased rental from the account as an estate asset.

The nephew next urges that the court below erred in allowing the personal representative-accountant to take credit for paying over the balance of a bank account, approximately $3600, held in decedent's name when decedent died to one Steven Yenokis.

The master found as facts: (a) in the latter part of 1960, decedent entered into a lease with Yenokis and one Edward Salmons for the rental of a plot of ground which decedent owned in Broomall, Delaware County, upon which decedent was to construct a restaurant for a sum not to exceed $25,000 which restaurant was to revert to decedent on termination of the lease; (b) decedent established a bank account titled

"James Z. Matthews, Construction Account" on which either decedent or Yenokis could draw checks in connection with the building construction; (c) the cost of construction exceeded the $25,000 deposited by decedent in the account by $6,000; (d) the balance in the account when decedent died was $3,612.99 and this balance was paid to Yenokis by the personal representative-accountant.[3]

The appellant contends that the only witness called by the personal representative-accountant was Yenokis, that he was an incompetent witness under the so-called "Dead Man's Act",[4] that the findings of fact of the master, confirmed by the court, were based on incompetent evidence and must be set aside and the accountant surcharged for its improper payment to Yenokis.

The posture in which this matter arose must be noted. Yenokis, at the audit, was not making any claim against the estate because he had been paid by the personal representative of the estate; therefore, the question presented is not that of Yenokis, claimant, against the estate but rather that of a claim by a beneficiary against the personal representative-accountant because, allegedly, the latter improperly paid Yenokis' claim. The case at bar presents a situation wherein a challenge is made to the competency of a paid claimant against a decedent's estate to testify in a proceeding in which a beneficiary of the estate seeks to surcharge the personal representative for having paid the claim.

The burden to prove incompetency rests upon the nephew, competency to testify being the rule and incompetency the exception: (*Rosche v. McCoy*, 397 Pa. 615, 619, 620, 156 A. 2d 307 (1959) and authorities

---

[3] Yenokis testified that, as security for their performance of the lease, he and Salmons paid an advance rental of $10,800.

[4] Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322.

therein cited; *Hendrickson Estate*, 388 Pa. 39, 44, 130 A. 2d 143 (1957)). The so-called "Dead Man's Act", supra, provides, inter alia, an exception to the general rule of competency and "disqualifies as a witness a 'surviving' or 'remaining' party or 'other person' whose interest is adverse to one who is dead and proscribes any testimony by such party or person against the deceased as to matters which occurred before death if the deceased had any right in the subject matter which has passed to a party of record." (*Hendrickson Estate*, supra, p. 45). In *Hendrickson*, we further said that "three conditions must exist before any such witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, . . .; (2) the interest of the witness—not simply the testimony—must be adverse;[5] (3) a right of the deceased must have passed to a party of record who represents the deceased's interest" (p. 45).

In *Brown's Estate*, 131 Pa. Superior Ct. 463, 200 A. 940 (1938), certain heirs had excepted to a decree of the Orphans' Court because it had not surcharged the executor for negligence in failing to collect a note allegedly owed decedent by a daughter of decedent as against which the statute of limitations had run by the time the account was filed. Insofar as presently pertinent, the Superior Court held (a) because the daughter was no longer liable on the note she was a competent witness at the hearing to surcharge the executor and (b) since the attempted surcharge "had no relation to any transaction between the account and the decedent during the latter's lifetime" and the attempted surcharge "related to matters occurring after the death of the decedent" (p. 467), the surcharge procedure was not concerned with any "thing or contract

---

[5] See: *Dillon's Estate*, 269 Pa. 234, 111 A. 919 (1920), as to test of adversity of interest.

in action" between decedent and her executor, and even the latter was competent to testify. We believe the rationale of *Brown's Estate* is sound and controls this phase of the appeal. Such conclusion is in accord with that reached in other jurisdictions. See: 2 A.L.R. 2d 349 et seq.

Reliance is placed by appellee on *Appeals of Fross and Loomis*, 105 Pa. 258 (1884) and *Burton's Estate*, 3 Pa. Dist. 755 (1894). *Fross* was decided under the Act of April 15, 1869, P. L. 30, which was repealed by the Act of 1887, supra, and is presently inapposite.[6] *Burton*, which heavily relied on *Fross*, cannot now be considered authoritative.

---

[6] Cf. *Warren v. Steer*, 112 Pa. 634, 5 A. 4 (1886); *Barbour v. Wiehle*, 116 Pa. 308, 315, 9 A. 520 (1887); *Heft v. Ogle*, 127 Pa. 244, 249, 18 A. 19 (1889). In *Fulmer's Estate*, 3 Pa. Dist. 457 (1893), the court said: "Should she be excluded on the ground of interest? This contention now arises out of an effort to surcharge the accountant and with an alleged improper payment made to the widow. It is between the accountant and the estate of the deceased. If the widow still has an interest in the event she is disqualified. Her interest, if any, arises out of her liability to repay to the accountant, should he be cast in this contention. If he cannot legally recover from her, manifestly she has no disqualifying interest. The payment appears to have been a voluntary one made by the accountant to the widow, after a careful inquiry as to her right to receive the money. He was not required to compel her to bring suit, or to deal with her at arm's length. Where such payment is made there is no liability on the part of the creditor to pay the money back. In Miskimis' Ap., 114 Pa. 530, it was said: 'There is no principle in morals or equity in case of the voluntary payment of a debt by the administrator of a solvent estate that would require the creditor to refund the money.' The cases of Dilver v. Building Ass'n, 39 Legal Intell. 383, s.c. 15 Phila. 344, Steel v. Arnold, 8 W.N. 249, Miller v. Hulme, 24 W.N. 131, and Building Ass'n v. Roumfort, 98 Pa. 85, are to the same effect.

"Therefore it does not appear that the widow had any such interest as disqualified her, and her evidence ought to have been received."

Yenokis had no adverse interest to the estate of the decedent. His claim had been paid and, in the attack on the account which sought to surcharge the personal representative for improper payment of the claim, he had nothing to gain or lose in the "direct legal operation and effect of the judgment" rendered in this action. See: *Dillon's Estate,* supra; *Gaston Estate,* 361 Pa. 105, 62 A. 2d 904 (1949).

In view of our conclusion that Yenokis was competent to testify, we need not consider the propriety and effect of Yenokis being called as a witness by the personal representative.

Lastly, appellant attacks the award to the master or auditor of $4500 compensation for his services alleging such a compensation was excessive, was arrived at without a hearing and that, even if reasonable, should be paid only by contribution from the assets of the estate and the assets passing to the widow by virtue of joint ownership with decedent. Cf. *Klein Estate,* 429 Pa. 27, 37, 38, 239 A. 2d 464 (1968).

While this matter was not raised in the court below and need not be considered, we prefer to place our conclusion thereon on the ground advanced in *Davidson's Estate,* 323 Pa. 113, 118, 185 A. 782 (1936); "The final attack made by appellant is upon the amount of the compensation, $10,000, which the court fixed for the auditor. As we said in Stockdale v. Maginn, 207 Pa. 226, 227, 56 Atl. 439, 'The learned court below who had far better opportunity than we, for forming a correct judgment deemed the compensation a just one.' In Com. v. Traders & Mechanics Bank of Pittsburgh, 268 Pa. 526, 529, 113 Atl. 186, we commented thus: 'Where there is nothing further to go on than a mere inspection of the auditor's work as disclosed by the printed paper books, an appellate court will not review the discretion of the lower court in

628

fixing the auditor's compensation.' In Moats v. Thompson, 283 Pa. 313, 323, 129 Atl. 105, we observed: 'Challenge is made of the amount of the auditor's fee. It was approved by the court below and there is nothing on the record satisfying us that this approval was improvident. We will not, therefore, interfere with the lower court's exercise of discretion in regard to it.'"

The challenges to this account were both by the widow and the nephew. To the extent that the auditor's services were performed in connection with the determination of what assets were includible as estate assets rather than as assets jointly owned by the widow and decedent and with the determination of what, if any, contribution should be made by the widow toward payment of income tax deficiencies, a contribution toward payment for such services should be made by the widow. To this end, the matter is remanded to the court below.

Decree, as modified, affirmed.