**Phillips Estate**

*Susan P. Windle*, for accountants.
*David C. Patten*, for claimants.

KURTZ, P. J., June 6, 1973.—This is a contest between the personal representative of decedent in the instant estate and the executor of the will of Kathleen T. Phillips, the instant decedent's mother, who died about a year and a half after he did. It involves items of antique furniture now claimed by each of the contesting estates, which were inventoried as assets of the instant estate and later sold by agreement of the parties in interest, leaving the proceeds of that sale for distribution to the successful party in this controversy. The auditing judge awarded that sum to the representative of the instant estate. The executor of the mother's will has filed exceptions to that disposition.

Decedent's widow, the executor of his will, who is bequeathed one-half of the residue of his estate, testified that the items here in dispute were moved from the mother's property onto the property which the witness and her husband occupied some time between 1964 and 1970 and that she thought that most of that property had been so moved around 1964 or 1965. Decedent died September 9, 1970. She also testified that these articles were stored over the garage upon that property and that she knew that her husband had shown them to other people as belonging to him. Objection to the competency of that testimony was made by counsel for the opposing estate, claiming that its admission violated the provisions of the Dead Man's Rule of May 23, 1887, P. L. 158, sec. 5, cl. (e), 28 PS §322.

In addition, the personal representative of the instant estate introduced the testimony of an insurance broker to the effect that the items in question were listed upon an insurance policy which he issued in the names of this decedent, his mother, decedent in the contesting estate, and decedent's brother, the executor of the mother's will, in June of 1965, which

was thereafter modified by endorsement in October of 1966, so as to eliminate that furniture from its coverage and that a separate "fine arts policy" was issued to this decedent in September of 1964 to which an endorsement was added under date of March 15, 1965, which included these antiques within its coverage.

On behalf of the mother's estate it was shown that in 1931, when the estate of this decedent's father was being settled, this decedent with his mother, who were the executors in that estate, filed a Federal estate tax return which contained a list of personal property then claimed by the mother. Thus, this decedent admitted the mother's ownership of that property at that time. In addition, the claimant offered the testimony of the mother's executor to identify the particular items here in question as being included upon that list. Counsel representing the instant estate objected to the latter testimony as being incompetent under the provisions of the Dead Man's Rule. The record is not clear that he is entitled to receive a direct benefit under the terms of his mother's will; the will itself was not offered into evidence.

Thus, we must now pass upon the competency of the challenged testimony offered on each side of the issue and ultimately decide whether the present claimant, the mother's estate, has sustained its claim to these items of property. These questions are not easily decided.

In Hendrickson Estate, 388 Pa. 39, 43 (1957), a case involving the ownership of a diamond ring claimed by decedent's daughter as having been given to her prior to decedent's death, the court said: "The executor having proven possession in the decedent at the time of his death, the burden shifted to the appellant to establish facts essential to the validity of her claim of ownership as a donee of the ring. In Carr Estate, 371

Pa. 520, supra, at page 523, it was stated: 'The burden of proof is on anyone who claims property in the possession of another to establish facts essential to the validity of his claim of ownership: . . . It is true that in each of the above cited cases the property was in the hands of claimant and the claim was made by the estate. But the same principle applies where the situation is reversed. Where, however, the claim of ownership is based upon an alleged gift of property found in decedent's possession, claimant's burden of proof is greatly increased.' "

However, in Carr Estate, supra, it was also said:

"A *presumption of ownership* does not arise *solely* because property is in the possession of a decedent at death. Many circumstances may exist under which property is in the possession of a decedent without the presumption or inference of decedent's ownership." (Emphasis in the text.)

Concerning the application of the Dead Man's Rule, the Supreme Court said in Clay Estate, 438 Pa. 183, 190, 191 (1970): "As we stated in Hendrickson Estate, 388 Pa. at 45: 'Under this exception [a "surviving" or "remaining" party or "other person" whose interest is adverse to one who is dead] three conditions must exist before any such witness is disqualified: (1) The deceased must have had an actual right or interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.' See also Matthews Estate, 431 Pa. 616, 246 A. 2d 412 (1968). The difficulty with a case such as this is that it is not possible to decide whether the three conditions have been met without deciding the ultimate issue . . .

"To break this circle we stated in Ford Estate, 431

Pa. at 187 (quoting from the trial court): 'A problem has always existed in the application of this statute (Dead Man's Act) to controversies between an estate and one who claims property originally owned by the decedent but allegedly the subject of inter vivos transfer to such person. The difficulty stems from the facts that there are . . . two parties with a possible interest in the property, each of whom might have an interest adverse to that of the decedent, depending on whether the transfer is valid or not, which is, however, the ultimate issue. This Gordian knot is cut by determining whether the gift or transfer is prima facie valid; with this determined, it becomes possible to decide to whom the decedent's interest has passed, and the other party to the controversy is rendered incompetent.' "

Applying the principles recited above to the situation which this case presents, it can first be determined that the disqualifying conditions set forth in Clay and Henderson, supra, have been shown to exist insofar as the testimony of decedent's widow is concerned. Here, decedent's mother did have an actual interest in the matter at issue; this witness's interest as a beneficiary under the terms of her husband's will must be adverse to the claim of the mother's estate; the dead mother's right has passed to her executor, who represents that interest upon this record. Thus, she should not have been permitted to testify in this proceeding.

The situation with regard to the mother's executor is not the same. We have already noted that his interest, if any, under the provisions of his mother's will has not been defined. As the executor of her will, he acts only in a fiduciary capacity, representing the interests of those who benefit under the terms of that will. Although under the rule of Hendrickson it can

be said that his brother had an actual interest in the matter at issue and that that right has passed to a party of record, it cannot be said that this witness's interest is adverse to that of his deceased brother. This witness may or may not benefit as the result of an award in favor of the mother's estate. Thus, his testimony identifying the items in question as having been included in the claim of the mother at the time of the father's death may properly be considered in arriving at our decision.

From the above it can be found that the instant decedent admitted the mother's ownership of the items in question in 1931, and that those items remained upon her land until they were moved to the property occupied by this decedent in 1964 or 1965, where they remained until he died. Parenthetically, we should note that the mother's executor also testified that he was aware that these antiques had been moved from the one location to the other at about that time. We can also find that at or about that time this furniture was dropped from the list of items insured under a policy issued to the three interested parties and that thereafter it was insured as the property of decedent only. It is included in the inventory and appraisement filed in the instant estate.

In Hendrickson, supra, it was stated that anyone who claims property in the possession of another has the burden of establishing facts essential to the validity of his claim of ownership. By the terms of that rule, the mother's estate had that burden in this case. We do not believe that it has carried that burden. At best, it proved only that the mother claimed ownership of the property at the time of her husband's death, at which time this decedent acknowledged the validity of her claim. That a change in circumstances occurred between that time and the time of the instant dece-

dent's death is obvious; the property passed from the possession of the mother into the possession of the son. Whether that change came about by way of gift or sale or in some other fashion need not now be decided. We need only conclude that the claimant has not met his burden of proof. He has not proved that the mother was the owner when this decedent died. Having reached that conclusion, his claim must fail. His exceptions to the auditing judge's decision in that regard are hereby dismissed.