# Black's Case.

1. Under the 14th section of the Act of 13th June, 1836, relating to lunatics, the Court of Common Pleas may commit the custody and care of the person and estate of a lunatic, to such person as they deem most suitable. The committee so appointed is removable by the said Court at their discretion, and such decree of removal is not the subject of review by this Court on appeal or certiorari, either under the 3d section of the Act of 21st April, 1846, in relation to public officers, or otherwise. The decree of removal is conclusive.

2. The Court of Common Pleas is not limited, by the 43d section of the said Act of 13th June, 1836, to the grounds of removal specified in the 12th and 22d sections of the Act of 29th March, 1832, relating to Orphans' Courts, as cause for the removal of executors, administrators, or guardians; antipathy or prejudice on the part of the lunatic towards the committee, is a proper ground of removal.

APPEAL by William Black from an order of the Court of Common Pleas of *Blair county.*

The case was brought up on *certiorari.*

On the 20th of March, 1850, the petition of James Taylor was presented to the Court of Common Pleas, representing Ann Decker to be a lunatic; and that the petitioner was a relation by blood. A commissioner was thereupon appointed, and an inquisition returned to June Term following, finding the said Ann to be a lunatic and the owner of real and personal property. This inquisition was on 19th June confirmed, and William Black, the appellant, appointed committee of the person and estate of the said lunatic. He gave the required security, and entered on the discharge of the duties of his trust. On the 20th October, 1850, the petition of Ann Decker, the *lunatic,* was presented, setting forth that her committee had been appointed without her consent, and that she regarded him as her enemy, and praying for his dismissal and the appointment of David G. Hunter in his stead. The petition was

[Black's Case.]

endorsed by sundry citizens of the township in which she resided, who further intimated that Black was not a proper person to act as the committee. On the grounds set forth in this petition, a rule was ordered on this appellant, returnable at December Term, 1850, to show cause why he should not be discharged. At December Term, the rule was returned *with an affidavit of service by reading*, thereon endorsed. The committee was thereupon discharged, as was alleged on his part, *without a hearing*, and of this order he complained. Hunter was appointed committee in the place of Black.

Exceptions were filed: 1. That the Court erred in discharging the appellant on the petition of the lunatic, Ann Decker, and others, without even a verification of the facts therein set forth by an affidavit. 2. In discharging the appellant, because the complaint set forth in the petition, if true, was not a legal ground for his dismissal. 3. In discharging the appellant without affording him an opportunity of being heard, and without any evidence whatever establishing the truth of the facts alleged against him.

*Blair*, for appellant.—The Courts of Common Pleas have the like power and authority in respect to the dismissal and discharge of the committees of the person or estate of lunatics, as is possessed by the Orphans' Courts in respect to the guardians of minors. Act 13th June, 1836, sec. 43, *Dunlop* 754.

The jurisdiction of the Orphans' Court is limited in respect to the removal of guardians by the 12th and 22d sections of the Act 29th March, 1832. The guardian can be dismissed only, 1. On due proof of his mismanagement of the estate or misconducting himself in respect to the maintenance, education, or moral interests of his ward. 2. On his neglect or refusal to give such security as may be required, when there is due proof of his probable insolvency or of his mismanagement of the property of his ward, or of his refusal to exhibit correct inventories or accounts.

The dismissal of a guardian for any other cause than those expressly set forth in the 12th and 22d sections above stated, is irregular: 2 *Watts* 175, Cohen's Appeal; 7 *W. & Ser.* 401, Webb *v.* Deitrich.

But if it were conceded that the grounds laid in the petition were sufficient, the order of the Court dismissing the appellant on due proof of the *service of the rule*, was irregular. In the case of Shilling's Appeal, 1 *Barr* 90, the citation was served on the guardian to show cause why he should not be discharged, and on proof of service he was discharged by the Court below; but it was held on appeal, that, "The facts set forth in the complaint ought not to have been taken *pro confesso* merely because the respondent neglected or refused to answer. All that the Court

could do in his absence was to proceed *ex parte*, and judge how far the complaint was sustained by the evidence of his antagonist."

The petition for the discharge of the committee was not verified by affidavit, as is expressly required by 57th sec. Act 29th March, 1832.

The process to compel the appearance of appellant was not served by the proper person, nor in the manner required by the same Act of Assembly.

There was no hearing of the case, and this was equivalent to want of notice.

*Wilson*, contrà, moved to quash the *certiorari*. He contended that the Court had a discretionary power to remove a trustee in a case of a proceeding in lunacy, and that the appellant should have been removed because he was odious to the lunatic. He cited 9 *Ser. & R.* 317, Gest's case; 6 *Whar.* 191, Fuchs's case; 5 *Barr* 177—232; 4 *Id.* 301; 4 *Harris* 321, Guthrie's Appeal.

*Blair*, in reply.—Both an appeal and *certiorari* lie in a case of this description.

The 3d section of the Act of 21st April, 1846, in relation to certain public officers, provides that any person or body corporate aggrieved by any final order or decree in equity, under the general or special equity powers conferred upon the several District Courts and Courts of Common Pleas of this Commonwealth, other than those of the city and county of Philadelphia, in any suit or proceedings now pending, or which may hereafter be instituted, shall be entitled to an appeal to the Supreme Court, in the same manner and upon the same terms as appeals are allowed from the Orphans' Court: *Acts of* 1846, p. 433.

The opinion of the Court was delivered, June 17, by

WOODWARD, J.—In England, committees of lunatics are appointed by the Lord Chancellor in his ministerial and not in his judicial capacity, by letters patent under the great seal, and during pleasure. The committee is considered as a mere bailiff appointed by the crown and under its control, to take care of the property, and has no interest in the land of the lunatic: *Shelford on Lunatics*, 180; 2 *Law Library* 114. And it is laid down by Lord COKE, that the committee of a lunatic, whether acting by the authority of the crown or not, has no further or other powers than those of a bailiff: 4 *Rep.* 127 *b*. Regarded as a mere bailiff of the crown, the committee is liable to account, to censure, to punishment, and to removal if he shall misconduct himself. Bankruptcy is a cause of removal, though the custody of the person is not always changed on that account: Ex parte Mildmay, 3 *Ves. Jr.* 2.

[Black's Case.]

A committee of a lunatic who had been guilty of a contempt by publishing a pamphlet which reflected on persons acting in the management of the lunatic, under the Chancellor's orders, and had intruded into the Master's office and interrupted the business there, was dismissed without a hearing, except as to the contempt: Ex parte Jones, 13 *Ves.* 237. And see *Shelford on Lunatics* 167–8, for other instances of removal of committees. The power of *removal* seems to be exercised in England by the Lord Chancellor, not only as the keeper of the seals, but often also as the head of the Chancery jurisdiction.

In Pennsylvania, the constitution clothes the Supreme Court and the Courts of Common Pleas with the powers of a Court of Chancery, as to the care of the persons and estates of those who are *non compos mentis.* Inasmuch as when the constitution was adopted, Courts of Chancery in England never appointed committees, it might be doubted whether the constitution conferred this power on our courts ; but if it did not, the legislature supplied it. The appointment of committees of lunatics being a prerogative of the sovereign, it must reside *somewhere* in our government, and if the people did not vest it in the courts by the constitution, they left it with the legislature, who have vested it in the courts. Without recurring to the earlier Acts, the 14th section of the Act of 13th June, 1836, relating to lunatics and habitual drunkards, provides that on the return of an inquisition finding the lunacy or habitual drunkenness, it shall be lawful for the Court of Common Pleas to commit the custody and care of the person or estate of the lunatic or drunkard " to such person or persons as they shall deem most suitable, according to the rules heretofore practised and allowed." According to the rules heretofore practised and allowed, whether in Pennsylvania or in England, the committee has been regarded as the mere bailiff of the appointing power, holding his office by no other tenure than that of the pleasure of the crown in Great Britain, and of the courts in Pennsylvania, and, of course, removable at pleasure. It is remarkable how carefully the Act of 1836 intrusts the estate of the lunatic or drunkard to the Court, and limits the powers of the committee. The management of the estate and the application of the income are the only things the committee may do without the precedent authority of the Court; and for the faithful performance of these duties, he must give security to the satisfaction of the Court, and receive such compensation as the Court shall allow. It is a naked power, and that carefully limited and restrained, that is intrusted to the committee, without any interest whatever in the estate. He is a mere instrument, by whom the Court works out the beneficent purposes of the statute, and may be dispensed with when a more efficient and satisfactory instrument is at hand. Bolling *v.* Turner, *Randolph's Reports* 584, is an authority to this point.

[Black's Case.]

But it is said the 43d section of the Act limits the powers of
the Courts of Common Pleas over committees, to the cases in
which the Orphans' Court removes guardians of minors. Such is not
a sound construction of that section. The 12th and 22d sections
of the Act of 29th March, 1832, relating to Orphans' Courts,
define the causes for which the Orphans' Court (a Court of
limited jurisdiction) may remove guardians; and the 43d section
of the Act of 1836 *empowers* the Common Pleas to remove com-
mittees for the same causes. This is a declaratory, and not a
restrictive provision. There may be many circumstances beside
those enumerated in the Act of 1832, in which the interests of the
lunatic, and the claims of humanity would demand the prompt
interposition of the Court. This case is an illustration. In con-
sequence of antipathy to her committee, the lunatic refused to
receive support at his hands. This would not fall within the sta-
tutory rule for removing guardians; and, if the Common Pleas is
to be restrained to the stinted measure of Orphans' Court powers,
the lunatic might starve. The unfounded prejudices of a lunatic
against the committee are to be regarded by the Courts: see Ex
re Fletcher, 6 *Vesey* 427; but upon the construction contended
for, the Court would be powerless in this case, and in a multitude
of emergencies where relief can be had only by removing one com-
mittee and appointing another. The powers of a chancellor are
commensurate with the demands of the occasion; and under our
constitution and Acts of Assembly, the powers of our Courts
are equally humane and ample. It would be a reproach to our
institutions if it were not so. And those powers, so far as they
relate to the appointment and removal of committees, are not the
subject of review on appeal. Dangerous consequences might ensue
from protracted litigation between a lunatic and his committee.
In England, an appeal against proceedings touching the awarding
or refusing commissions of lunacy, or any orders made in lunacy
by the Lord Chancellor, does not lie in the ordinary course to the
House of Lords, but immediately to the king in council: *Shel-
ford*, p. 19; but an appeal by a removed bailiff of the king, to
either lords or council, would be a novelty. And why should the
bailiff of the Court here have his appeal? He has no interest in
the estate of the lunatic to be prejudiced by his removal, and no
estate in his office. In the exercise of a supervisory discretion,
many cogent reasons may influence the Court of Common Pleas,
and justify their dismissal of a committee, which cannot appear on
the record for the supervision of the Superior Court. The power
is best lodged in the local tribunals. The constitution grants the
powers of a Court of Chancery to the Common Pleas, as well as
to the Supreme Court; whilst the Act of Assembly makes its
grant exclusively to the Common Pleas. For these reasons we
hold the dismissal of committees by that Court to be final. From

[Black's Case.]

any final order or decree of the Common Pleas, touching the estate of the lunatic, or the fact of lunacy, an appeal to this Court undoubtedly lies by virtue of section 3d of the Act of 21st April, 1846, "in relation to certain public officers and their sureties": *Purdon* 284 (*Stroud & Brightly*), *title Courts;* but the dismissal of a committee is not a "final order or decree in equity" within that Act, and no appeal lies.

If it be said that this is clothing the Common Pleas with despotic power, let it be remembered that it is in behalf of a class of fellow beings, who, beyond all others, deserve our sympathies, and need the protection of despotic power. Arbitrary power can never be better employed than in watching over and providing for those who have been smitten in the seat of reason. It may be abused, but the inducements to abuse it are almost inappreciable; whilst the necessities for its existence and exercise are frequent and real.

In dismissing this appeal, we do not mean to be understood as approving of the practice that was pursued in this case. We think it would be well for the Common Pleas, to conform their practice as nearly as possible to the course of proceeding in chancery; but holding that no appeal lies from their interlocutory act of dismissing the committee and appointing another, we dismiss the appeal, at the costs of the appellant.

BLACK, C. J., delivered a dissenting opinion.