Rowley, Appellant, *v.* Rowley.

Argued October 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*L. C. Barton,* for appellant.—A partnership was effected by operation of law: Brown v. Beecher, 120 Pa. 590; Dairy Co. v. McCallum, 223 Pa. 560; Floyd v. Hoover, 156 Pa. 276; Schaeffer v. Eichenberg, 62 Pa. Superior Ct. 510.

The same principles are applied by courts of equity to partnership and joint business transactions.

*Albert C. Hirch, Owen S. Cecil* and *John M. Freeman, of Watson & Freeman,* for appellee.—The finding of fact by the court below that the agreement of the parties was that a partnership should not exist until certain conditions precedent were complied with, is fully supported by a preponderance of evidence, and will not be disturbed on appeal, as the finding involves conflicting evidence and credibility of witnesses: Glenn v. Trees, 276 Pa. 165.

The dissolution of the injunction against appellant was one of the conditions precedent to the formation of a partnership: Beaver v. Slane, 271 Pa. 317; Coens v. Marousis, 275 Pa. 478.

Appellant's contention that the appointment of a master was void, is without merit: Com. v. Archbald, 195 Pa. 317; Gibson Distilling Co. v. Netter, 62 Pa. Superior Ct. 136; Murphy v. Murphy, 85 Pa. Superior Ct. 169.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:

The plaintiff and defendant were brothers, both engaged in the manufacture of artificial legs, the former doing business for the Best Artificial Limb Company, a Delaware corporation, of which he was the principal stockholder, and the latter having a well established

business in Pittsburgh and Youngstown, Ohio. Defendant manufactured a leg under a patent owned by a Chicago company, which had secured from the District Court of the United States an injunction against the Best Company, restraining it from the use of the name "Rowley" in connection with its business. Relations between the parties to the present litigation were strained prior to 1924, the defendant having become the Pittsburgh agent of the Illinois corporation, with the right to use its inventions. In April of that year the brothers agreed to combine their interests, and, upon the performance of certain conditions, to form a partnership to carry on the manufacturing business in which both were interested. This was conditioned upon the securing by plaintiff of a dismissal of the injunction granted by the district court against him, the making of a fair inventory of the property of the Best Artificial Limb Company, and the turning over of its assets to the partnership to be created. Temporarily, each party made small cash contributions, and plaintiff gave possession of such property and books as he had to defendant, who carried on the business of sale and manufacture, pending the performance of the conditions precedent to the establishment of the proposed firm, which were in fact never complied with. In January, 1925, plaintiff became dissatisfied and gave notice to defendant of his refusal to continue the so-called partnership, which in reality had never come into existence, since the injunction above referred to had not been set aside, and no agreement could be reached as to the inventory of the Best Company, in which items for obsolete material and other charges, claimed to be improper, had been included.

On January 7, 1925, plaintiff asked for the appointment of a receiver, and the application came for hearing before Judge DREW. After testimony had been taken, it was agreed that the case should be placed on the equity list, and there heard, the evidence already received to be considered by the chancellor. The matter came in due

course before Judge CARPENTER, who, in an opinion filed, determined that no partnership had been established, but that defendant should account for the business conducted from the previous April, and carried on for the joint interest of both parties. He presented a statement showing debits and credits, and, exceptions having been filed, the court held the matter should be referred to an assessor, as permitted by Equity Rule 65, to determine the correct balance due to plaintiff.

The finding that no partnership had been consummated, and the refusal to grant an injunction or appoint a receiver, was objected to by plaintiff, and the matter came before Judge MACFARLANE for further consideration. The latter was of the opinion that a proper decision had been reached by the chancellor first hearing the case, and who had died in the meantime, but came to the conclusion that error had been committed in his failure to make express findings of fact and law. He, therefore, reconsidered the evidence, reached a determination and filed a new decree, likewise holding that, the conditions contemplated not having been complied with, no partnership had ever come into existence, but that defendant should account for any property or moneys received; and, for the ascertainment of the amount due, again submitted the question to an assessor, by stipulation of all parties concerned, whom he called, however, a "master in accounting." This decree was subsequently made final, and no complaint was then made, nor until after the present appeal was taken, to the submission of the matter to such officer. Notwithstanding the ordering of an account, as plaintiff had prayed, a review by this court was then asked, the points urged being the failure of the court below to find that a partnership existed, and the refusal to appoint a receiver. This proceeding was quashed (Rowley v. Rowley, 289 Pa. 171), as the appellant was without standing to complain as the record then stood, and, in the course of the per curiam opinion filed, it was said that the questions de-

sired to be raised by him could be considered only on appeal from the final order of accounting.

When the record was returned, by agreement of all parties, the matter was again referred to the assessor, or master, for the stating of an account. No objection was made to his acting as such, and he proceeded to determine the correct debits and credits. Again, plaintiff insisted a partnership existed, a question which had been found adversely by the chancellor, and this conclusion was properly followed by the assessor. He found the material facts, and determined the balance due to plaintiff as a result of the joint undertaking. Exceptions were overruled by him, and again by the court in banc, which entered the final decree now appealed from. At no time was objection made in the court below to the appointment of an assessor to pass upon the items of the account submitted, and it was not until notice was given to defendant of the questions to be argued on this appeal, that the suggestion was made that the reference was improper, and, therefore, the decree finally entered by the court a nullity. In view of the fact that the matter was proceeded with under stipulation joined in by plaintiff, and the alleged defect was not called to the attention of the court below, we might well disregard the question now raised (Williams v. Finlaw, Mueller & Co., 292 Pa. 244; Baily v. Ramsey, 285 Pa. 521), but since the proper practice to be followed in such cases is involved, the matter may be briefly referred to.

Prior to the adoption of the Equity Rules of 1894, masters were commonly appointed to take testimony, make findings of fact and law, and report decrees for consideration by the chancellor. At that time the office of "master" was discontinued, "except in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court." Thereafter an equity proceeding could not be heard generally by a master, but it was necessary that the testimony be submitted to the court to make the findings of

fact and law, as well as the appropriate decree nisi, to be followed by a final one after hearing by a court in banc. A proceeding otherwise conducted was a nullity, and without validity: Palethorp v. Palethorp, 184 Pa. 585. But after decree properly made, such as the direction to account, it was permissible, under the rules, to appoint a master to carry out the order made: Com. v. Archbald, 195 Pa. 317; Gibson Distilling Co. v. Netter, 62 Pa. Superior Ct. 136; Murphy v. Murphy, 85 Pa. Superior Ct. 169. It was the common practice, under these rules, to appoint a master to state an account, when the right to it had been preliminarily determined: Rolshouse v. Wally, 272 Pa. 506.

On January 1, 1925, the new equity rules went into effect, and the exception, found in those of 1894, as to the appointment of masters, was altered, as appears by Rule 15, which declared that "no examiners, masters or auditors should be appointed save in these instances where, by statute, or these rules, it is expressly so provided." This regulation was made so that the testimony, upon which the decree was based, should in all cases be heard by an equity court, and to remedy the abuse of shifting this burden from the chancellor to some chosen member of the bar, followed, as it would be, by oppressive costs. But express provision was made by Rule 65, where the final decree for an accounting had been entered, to name experts or assessors to pass on debits and credits, and strike the balance due, as was done in this case, if, in the opinion of the court, complicated accounts were involved. When Judge CARPENTER entered his decree he named an assessor, and this course was also deemed necessary by Judge MACFARLANE, after he finally determined the rights of the parties, though he called the appointee a master in accounting, but this misnomer of the officer is immaterial. "Whether the person to whom the case is sent be called an assessor, an auditor, a referee or a master, is of no importance, the substance of the matter is the right of the court in ex-

ceptional cases to avail itself of exceptional assistance, in executing or supervising the execution of the details of its work, not requiring the exercise of exclusively judicial functions. It has not been shown that the court below exceeded its discretionary powers in this respect": Com. v. Archbald, supra, p. 320.

There is express authority given to the court by Rule 65 to appoint an assessor to state an account, where, in its discretion, the character of the accounts involved makes this course expedient. It cannot appoint a master to take testimony, make findings of fact and law, and suggest a decree, and determine whether an account is legally required, but, when these matters have been judicially determined, the statement of the proper items of debit and credit by an assessor is permissible, as was done here by stipulation of those interested. Judge MACFARLANE found the facts, and the final decree had been entered. The assessor was chosen for convenience, and by consent, solely to fix the balance due by one party to the other. Though not required to pass on the objections now raised for the first time, yet we hold that, under the circumstances presented, the procedure followed cannot be successfully attacked.

On the former appeal in this case, before referred to (289 Pa. 171), the final decree of the court below was complained of, in part, on the ground of its finding that no partnership had ever been formed, though such relationship was intended by the parties in case certain conditions were complied with. The record shows a failure on part of plaintiff to secure the dissolution of the injunction obtained by the Chicago corporation, as well as the furnishing of a true, fair and acceptable inventory of the goods to be turned over by plaintiff, both conditions precedent to the formation of the firm. The essential facts were found adversely to plaintiff, and there was ample evidence to justify the conclusion reached by the chancellor and approved by the court in banc. Under such circumstances, this court will not interfere with

the finding made below: Miller v. Central T. & S. Co., 285 Pa. 472; Glenn v. Trees, 276 Pa. 165; Watson v. Kelley, 289 Pa. 44.

We said in the former opinion that complaint of the conclusion reached could be considered only after final decree on the accounting ordered. The record upon which the court based its determination has now been reviewed, and we find no error. "Whether a partnership existed must be found from the terms of the agreement......Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has arrived, or the contingency has happened......A mere agreement to form one does not of itself create a partnership; nor does the advancement by one party of his agreed share of the capital. The entire agreement must be considered with all the attending circumstances": Coens v. Marousis, 275 Pa. 478, 481; Beaver v. Slane, 271 Pa. 317.

At the time the conditional understanding to form a partnership was made, the plaintiff was the owner of stock in the Best Artificial Limb Company, the assets of which were to be delivered, and the defendant was conducting his own business in Pennsylvania and Ohio. Though certain business was done on the joint account from April, 1924, to January, 1925, pending the performance of conditions which would bring the partnership into existence, yet the parties separated before the consummation of the transaction, and no firm, such as contemplated, was ever formed. For moneys or property received from plaintiff, intended ultimately to be used in the proposed partnership, the defendant was in duty bound to account, and an order to this effect was properly made. The assessor was appointed to determine the proper debits and credits, and it is his conclusion of the allowance of various of these items, in turn approved by the court, to which the assignments of error are mainly directed. An examination of the record shows

all of the findings to be supported by sufficient competent evidence, and they are, therefore, to be given the same weight as the verdict of a jury.

It would unduly encumber this opinion, and serve no good purpose, to recite in detail each of the objections raised, and to refer to the evidence relating thereto, a review of which shows ample to sustain the findings. The examination of the transactions was properly limited to the time when the joint business terminated, and excluded matters occurring thereafter. As no acceptable inventories were ever made by plaintiff, copies of such were not the proper basis for determining the value of the assets. The question was the worth of what money or property was delivered to defendant, and the amount derived from its use. Nor can we see merit in the objection to refusal of an allowance for good will, based on the transfer by plaintiff of a card index of possible customers. The same was not used by defendant, and the appellant was given full opportunity to remove it with any other property which had not been employed in the conduct of the joint business. An allowance of credit for a sum paid as attorney's fees, admittedly reasonable in amount, was not error, when the liability therefor was contracted not only for the benefit of both parties, but at the request of plaintiff himself. Nor does the testimony disclose an improper refusal of defendant to submit for inspection books and papers essential to the proper presentation of claimant's demand.

A careful examination of the voluminous record convinces us that a correct solution was reached, and that plaintiff has no just cause for complaint.

The assignments of error are overruled, and the decree is affirmed at the cost of appellant.