## Davidson's Estate.

114

Argued May 27, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,*
with him *James P. McArdle,* for appellant.

*Leonard M. Boehm,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 26, 1936:

The questions raised on this appeal relate to the ap-
pointment of an auditor by the court below to audit the
account of the committee of a lunatic and the compen-
sation to be paid to the auditor who was appointed.

The appeal is by Martha K. Hibbert, sister of the luna-
tic.   She is not next of kin of the lunatic, as the latter's
mother is living.   The mother is a weak-minded person
who has a trust company for guardian.   It does not ap-

peal. We have grave doubt whether Martha K. Hibbert has any standing to appeal. The only person interested in the account of the committee under the terms of the Act of May 3, 1909, P. L. 391, section 1, 20 P. S., section 2853, is the next of kin.

We have concluded to review the issues which appellant raises in the hope that our so doing may bring to an end the litigation to which the lunatic's estate has been subjected. Our so doing must not be taken as a precedent for a right to appeal in lunacy proceedings by those who are not next of kin of the lunatic.

The argument of appellant in support of the contention that the court had no power to appoint an auditor proceeds upon the assumption that lunacy proceedings are to be treated as proceedings in equity and to be governed by the equity rules, and, as Rule 15 provides that auditors shall not be appointed, the naming of an auditor was improper. This rule has no such broad application as appellant assumes it has. The rule reads: "Bills of revivor, cross bills, demurrers, pleas and replications (except, as to the last, where new matter has been averred in the answer), shall not be filed in equity, nor examiners, masters or auditors appointed therein, save in those instances where by statute or these rules it is expressly so provided." Proceedings in lunacy are not begun by bill, as is done in equity practice. Under the Act of June 13, 1836, P. L. 589, 50 P. S., section 691, which covers the whole field of lunacy proceedings and the management of lunatics' estates, the proceeding is inaugurated by the court of common pleas issuing a commission in the nature of a writ de lunatico inquirendo. The subsequent steps, by hearing before an inquest of six or more persons, traverse and trial in court before a jury, bear no semblance to the course of proceedings in equity.

It is true that under the Act of June 16, 1836, P. L. 784, 17 P. S., section 281, there is conferred upon the courts of common pleas the jurisdiction and *powers* of

a court of chancery in so far as it relates to "The *care* of persons and estates of those who are non compos mentis." It is plain that this limited language could not apply the rules of equity practice to lunacy proceedings.

Lunatics, their property, proceedings affecting them and their status before the courts, are in a class apart from all others: *Riebel's Est.*, 321 Pa. 145, 184 Atl. 118. The committee is the mere bailiff of the court which appoints him: *Black's Case*, 18 Pa. 434. The lunatic is in effect the ward of the court and his estate is in custodia legis: *Shaffer v. List*, 114 Pa. 486, 7 Atl. 791.

Moreover, Equity Rule 65 stipulates that in cases involving complicated accounts the court may employ to aid in the proper disposition of the case an accountant or other expert as an assessor, who shall be paid at a rate not exceeding that paid by business men for similar services. In *Com. v. Archbald*, 195 Pa. 317, 319, 46 Atl. 5, decided under Equity Rule 60 of 1894, we said: "Even by the letter of our rules, therefore, the office of master still continues in relation to the stating of an account, after it has been ordered by the interlocutory decree of the court. Undoubtedly the spirit of the rule is that in ordinary cases the court should settle the account as part of the adjudication of the whole case, but exceptional cases may require exceptional treatment, and this is specifically provided for by the rule in relation to accounts, 159 Pa. 26, that, 'in cases involving complicated accounts, or questions requiring the aid of experts, if the parties do not refer, the court may call in the aid of an accountant or other expert as an assessor.' Whether the court shall call in an accountant to sit with it as an assessor in stating the account, or shall refer the matter to a master sitting separately, is a matter which must be left largely to the discretion of the court itself which has the facts before it. In the case of *Mandamus to the Chester County Judges*, 193 Pa. 251, the reference to a master of a very complicated and voluminous matter of distribution was sustained by this court. Whether the

person to whom the case is sent be called an assessor, an auditor, a referee or a master is of no importance, the substance of the matter is the right of the court in exceptional cases to avail itself of exceptional assistance, in executing or supervising the execution of the details of its work, not requiring the exercise of exclusively judicial functions. It has not been shown that the court below exceeded its discretionary powers in this respect." In *Curtis v. Mankus,* 295 Pa. 381, 386, 145 Atl. 427, which involved the filing of an account of a partnership after a decree pro confesso in equity was entered, we said: "Under the new equity rules (No. 15), the office of auditor is abolished, except as otherwise provided therein, but by Rule 65 permission is given in an accounting case, after decree, following proper findings of fact and law, as here appear, to appoint an assessor to pass on items of debit and credit where complicated statements and claims are involved. The necessity for so proceeding is within the judicial discretion of the chancellor, and his action will not be set aside unless it has been abused. The mere fact that the individual named to perform such service is designated incorrectly as an 'auditor' rather than 'assessor' is immaterial. In *Rowley v. Rowley,* 294 Pa. 535 [144 Atl. 537], the right to so proceed under the rules now in force is fully discussed, and what was there said is controlling here."

Because of the peculiar responsibilities which are cast upon the judges of the courts of common pleas in connection with the administration of lunatics' estates, it is important that they should have the fullest information and aid in discharging their exacting duties. This is a large estate. The corpus amounts to more than $3,-500,000. Income during the three years which the account covered aggregated more than $500,000 and expenses more than $300,000. There were new security investments by the committee amounting to over $1,000,000 and mortgage investments of $380,000, as to which it was necessary that the court should be fully in-

formed. We are of opinion that the court was well within its rights under the circumstances in appointing an auditor to audit the account and to make report to it.

Another contention of appellant is that even if the court had power to appoint an auditor, his compensation was limited to a sum not exceeding $15 per day under the Act of June 4, 1879, P. L. 84, 17 P. S., section 1746. This act provides: "From and after the passage of this act, the compensation of auditors appointed by court to audit the accounts of administrators, executors, and trustees, and of commissioners appointed to make distribution of the proceeds of sheriffs', assignees' and other judicial sales, shall not exceed ten dollars for each day necessarily engaged in a case, unless the court for special cause shown allow a higher rate of compensation not exceeding fifteen dollars per day." It is clear that this act does not apply to auditors appointed by the court to audit the account of a committee of a lunatic.

The final attack made by appellant is upon the amount of the compensation, $10,000, which the court fixed for the auditor. As we said in *Stockdale v. Maginn*, 207 Pa. 226, 227, 56 Atl. 439, "The learned court below who had far better opportunity than we, for forming a correct judgment deemed the compensation a just one." In *Com. v. Traders & Mechanics Bank of Pittsburgh*, 268 Pa. 526, 529, 113 Atl. 186, we commented thus: "Where there is nothing further to go on than a mere inspection of the auditor's work as disclosed by the printed paper books, an appellate court will not review the discretion of the lower court in fixing the auditor's compensation." In *Moats v. Thompson*, 283 Pa. 313, 323, 129 Atl. 105, we observed: "Challenge is made of the amount of the auditor's fee. It was approved by the court below and there is nothing on the record satisfying us that this approval was improvident. We will not, therefore, interfere with the lower court's exercise of discretion in regard to it." Nor will we in the matter in hand.

The chancellor has this to say on the performance of the auditor: "The account here involved is of a most intricate nature. To aid the court, the auditor brought to the proceeding the special legal knowledge that the case required: skill in the analyses of complicated accounts and a capacity for work on infinite details that would have employed the whole machinery of the court over a long period of time and at great expense to the public. It seems to us a proper matter for reference, with all the expense upon the estate, the preservation of which will ultimately serve best these relatives who are objecting."

The order of the court below is affirmed. Costs to be paid out of the estate.