Halkias, Exrx., Appellant, *v.* Liberty Laundry Company, Inc., et al.

Argued January 11, 1949. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

W. *Horace Hepburn, Jr.,* for appellant.

*J. Warren Brock,* with him *George B. Clothier* and
*Edmonds, Obermayer & Rebmann,* for appellees.

OPINION BY MR. JUSTICE DREW, J., March 21, 1949:
Plaintiff, Maria S. Halkias, executrix under the will
of Theodore Halkias, deceased, filed this bill in equity
against Liberty Laundry Company, Inc., Central Vic-
tory Coat and Apron Supply Company, Inc., and four
individuals, who, with decedent, were the sole stock-
holders in the defendant corporations, to compel each
corporation to purchase from the estate shares of its
own stock in accordance with the terms of an alleged
contract entered into by decedent, the other stockhold-
ers, and the two corporations, and to require the indi-
vidual defendants to account for certain corporate funds
alleged to have been misappropriated by them in the
distribution of a certain joint venture pool. A decree
dismissing the bill was made final by the court en banc,
and plaintiff now appeals.

The following facts were found by the learned chan-
cellor: On or about January 3, 1932, decedent, and
defendants Kathiotis, Ambel, and Dennis Halkias, in
conjunction with several others, drew up an agreement
for the consolidation of several small businesses into
the two defendant corporations and the National Coat
and Apron Supply Company, Inc. This agreement pro-
vided, inter alia, that on the death of any stockholder,
his shares would be repurchased by the corporations at

book value plus good will computed at twelve times the average weekly receipts in the case of Central Victory and National, and six times the weekly receipts in the case of Liberty. As a result of some dispute, one George Halkias was given all the shares of National and both he and National were withdrawn from the plan before its consummation. Liberty and Central Victory then unanimously adopted by-laws similar to the terms of the agreement but which reduced the purchase price of shares of a deceased stockholder to book value plus goodwill of $2.00 per share. Decedent was made president of Liberty and vice president of Central Victory, and was at all times the dominant figure in the operation of the business until his death July 19, 1944. During the years 1935 and 1936 several of the incorporators withdrew and defendant DeOlden became a stockholder, thus making decedent and the four individual defendants the sole stockholders. At about the same time, the stockholders created a joint venture pool for the admitted purpose of evading corporate income tax liability. This pool, operating under decedent's direction and management, consisted of contributions from salaries, overstatement of expenses, and cash receipts not entered on the books. One month prior to decedent's death and in his absence, defendants agreed to distribute this pool which then had a balance of $122,961.81 consisting of $34,320.16 cash, shares of Liberty valued at $42,790, and advances to pool members of $45,851.65. Each member's share was based on his proportionate interest in the companies and on the amount of his salary contributed to the pool. Decedent received $13,884.14 of which $89.14 was in cash and the balance in shares. This amount represented an allotment of $40,761.51, less prior advances of $26,877.36.

From these facts, the chancellor concluded that the formula for the repurchase of shares in the original agreement had been modified by the unanimous adoption of by-laws by Liberty and Central Victory and,

therefore, that provision of the contract could not be specifically enforced. He further concluded that since the joint venture pool was created for an illegal purpose, equity would not decree an accounting of it.

Plaintiff argues that since the agreement is referred to on the stock certificates and in the corporate minutes subsequent to the adoption of the by-laws, it was preserved in toto. Such is not the case. The contract formula for evaluating the shares is inconsistent with the by-law formula and they cannot stand together. The same parties who made the agreement also approved the by-laws. They were cognizant of the terms of the contract and they chose, in certain instances, to change them. Where such changes were made, the by-laws must govern. The subsequent references to the agreement can only refer to those terms not changed by the by-laws. Nor did the by-laws adversely affect a vested property right of decedent. By his approval of the by-laws, he surrendered any rights arising out of the agreement inconsistent therewith. Plaintiff, standing in the shoes of decedent, may not assert a claim based on contractual provisions which are no longer effective.

Plaintiff contends that decedent was not a party to any fraud or illegality and is, therefore, entitled to an accounting of the joint venture pool. The chancellor found as a fact that the pool, of which all stockholders were members, was managed and directed by decedent for the sole purpose of defrauding the government of taxes. That finding, supported by the uncontradicted testimony of defendant DeOlden, as well as other witnesses, and affirmed by the court en banc, is binding on this Court: *Pa. R. R. Co. v. Driscoll*, 336 Pa. 310, 9 A. 2d 621.

Plaintiff maintains that to deny an accounting will produce an injustice and has cited several cases to support the proposition that the clean hands maxim will not be applied where an inequitable result would be reached. A careful analysis of those cases reveals that

they hold only that where funds are acquired lawfully and for a lawful purpose, plaintiff will not be denied an accounting because he is guilty of a wrongful act in a transaction not directly involved in the suit if such denial will reach an unjust result. Here, the whole purpose of the pool was illegal. Nothing is better established than the rule that "the law will not enforce an illegal transaction, nor will it be an instrument for distribution of moneys illegally gained": *Tucker v. Binenstock*, 310 Pa. 254, 165 A. 247.

A thorough examination of the record convinces us that the findings of fact are amply supported by the evidence, that the conclusions of law are correct, and that the bill was, therefore, properly dismissed.

Decree affirmed at appellant's cost.