## Miller v. Miller, Appellant.

Argued April 15, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Isadore Rapoport,* with him *Groman & Rapoport,* for appellant.

*Henry L. Snyder,* with him *Snyder, Wert & Wilcox,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1952:

Michael and Edward Miller are brothers. Prior to 1949 they owned separate businesses, Edward's being located in Brooklyn, New York, and Michael's in Allentown, Pennsylvania. After preliminary discussions extending over several months, the brothers came to an oral agreement in May, 1949, that they would pool their resources, merge their assets and transact their separate enterprises as one business. To this end they selected a property in Slatington, Pa., which was to be the seat of the united venture. Michael paid $500 as a down payment and Edward executed a bond and mortgage for the balance of the purchase price, which was $15,500. The new business was to operate under the name of Relco Oil and Chemical Co., the same title of Edward's business in Brooklyn, N. Y. Michael's firm, known as the Quoits Textile Products Co., was to lose its identity. By July, 1949, Edward had moved all of his business assets from Brooklyn to Slatington and by December of that year Michael's equipment, merchandise and raw material were an integral part of the establishment at the new place. In June 1949, both brothers visited the National Bank of Slatington, where Edward deposited $500 in his name, trading as the Relco Oil & Chemical Company.

It was understood from the time the brothers agreed to operate together that formal articles of partnership would be drawn up. This was never done, although the brothers conducted the business as an undivided operation.

Differences arose between the two brothers as to the conduct of the firm and Edward left it in June, 1950, withdrawing all its funds ($8,931.20) from the Slatington National Bank.

Michael then filed a bill in equity praying that he and his brother Edward be declared partners and joint owners of the real estate in Slatington, and that Edward be compelled to furnish Michael a complete accounting of all business transactions engaged in by the Relco Oil and Chemical Co.

The Court of Common Pleas, sitting as a court of equity, entered a decree granting the prayers of the plaintiff and the defendant has appealed to this Court.

There can be no question whatsoever that the relationship between Michael and Edward Miller in the handling of the business at Slatington was a partnership in every phase of the law covering such a relationship. As succinctly stated by Justice HUGHES in the case of *Mattei et al. v. Masci,* 351 Pa. 93, 94, 40 A. 2d 265: "Written articles of agreement are not necessary to prove a partnership, for such a relationship can exist under a verbal agreement." Further, that "the existence of a partnership may be implied from the circumstances."

A study of the record, which runs over 900 printed pages, reveals a partnership so absolute that one can only conclude that the unfortunate animosities which arose between the brother litigants curtained the facts for the defendant and dimmed his discriminating judgment. The learned Chancellor below in his able adjudication had occasion to refer to "the fierce tempers of both parties." It was probably the emotion described

by the Chancellor which wrecked the project and then, in retrospect, prevented the defendant from appreciating and appraising the circumstances which went into the formation of the partnership. The Chancellor found, and we agree with his findings, that there was an oral agreement of partnership between the brothers, an execution of the agreement by a merging of assets, a division of profits and a parity in direction and management.

The conclusion of partnership here does not need to be built upon inferences alone. The brothers in each other's presence announced themselves as partners. One disinterested witness Philip Boyko testified: "Mr. Michael Miller got Mr. Edward Miller in the center room there, and got us boys together, and he says, 'This is a partnership, and we will both give orders. You will give my brother as much obeyance as you feel you give me . . .' " . . . Q. They said that they were going in business together? A. That's right. In partnership, they were going to start a partnership." Another witness, also disinterested, Russell N. Cressman, testified: "I got to meet Mr. Edward Miller through his brother, Michael. He brought them into our plant. It was somewhere around the middle of June of 1949, at which time I was introduced to him, and I was informed that they were starting a partnership." Witness Max Kuller stated: "Well, Michael Miller introduced his brother to me, and in our conversation he said they were going into partnership."

Michael and Edward Miller before the world conducted themselves as partners. They used identical business cards, they drew equal salaries and paid themselves traveling expenses; they received equal withdrawals from profits, and both withdrew from profits to pay their respective household expenses. Edward never questioned Michael's authority to place orders for the company, and paid all purchases authorized by him. He

changed employes at Michael's request, and employes were hired and discharged by the brothers only upon joint consultation.

In the attempt to dissolve the concept of a partnership, counsel for the appellant Edward advanced the arguments that certain conditions precedent were never met, namely, (a) the separate businesses were to be closed by July 1, 1949; (b) the parties were to make equal contributions of capital; (c) Michael was to repay to Edward the sum of $5,062.22, allegedly due Edward.

But these conditions, if they were ever agreed upon, were set aside by the realities of the case and the conduct of the parties, just as one blue print which does not meet a given objective situation is discarded and another taken up. The Chancellor found as a fact that the partnership came into existence when Michael finally closed his business in Allentown and began his operations solely at the Slatington plant, with Edward's active acquiescence.

The record does not show that Edward ever sought to impose the payment of any debt as a condition to Michael's joining him in the business. In fact, Edward never saw fit to deduct or to take any credit for any of the amounts allegedly due him. Certainly, Michael's indebtedness to Edward in and of itself would not have any material bearing on the question as to whether a partnership existed between the brothers.

In the history of the entire transaction Edward never maintained that the receipt of profits by Michael was in repayment of a debt, or in payment of wages, annuities, or interest on a loan, or for a sale of business good will. Therefore the exceptions appearing in the Uniform Partnership Act of 1915, P. L. 18, Part II, sec. 7, 59 P.S. 12, to the rule that "the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner" are not applicable.

And even if the Chancellor had concluded the oral agreement had not crystallized into a partnership, Michael Miller would still be entitled to an accounting from Edward Miller for the money and property contributed for use in the proposed partnership. *Rowley v. Rowley,* 294 Pa. 535, 542, 144 A. 537.

Nor would appellee be barred from his right to an accounting, by virtue of the alleged wrongful removal of property belonging to the business: *Frazier v. Mansfield,* 305 Pa. 359, 157 A. 798.

The Chancellor also properly held under the evidence that the building in which the partnership business was conducted constituted a partnership asset, though title thereto was recorded in the name of Edward Miller alone. The costs of repairs, taxes, interests and insurance on the real property were all paid from the profits of the business and not by Edward Miller alone; and, as the Chancellor observed, it is logical to assume that the parties contemplated that the principal of the mortgage would also be paid from the proceeds of the business. The defendant's execution of the mortgage for $15,000 is not, therefore, to be compared to the plaintiff's cash outlay of $500 for the down payment. The more reasonable conclusion is that the plaintiff's contribution to the real estate was to be matched by defendant's contribution to the bank account, and that the division of the profits would thenceforth establish the parties on an equal basis. Since the property was purchased with partnership funds, the fact that record title thereto is in the name of one partner alone does not affect its status as partnership property: *Gerlach's Estate,* 364 Pa. 207, 72 A. 2d 271. "In equity, real property acquired with partnership funds for partnership purposes is regarded as personal estate, so far as . . . the adjustment of partnership rights are concerned . . .": 40 Am. Jur. sec. 172, page 250.

Appellant's counsel has prepared an excellent brief,

formidable in citation and persuasive in advocacy, but it is built on the faulty keel which maintains that the intent to be partners was lacking. It is with this assertion that his whole shipload of argument founders in the overwhelming sea of evidence against his client. Nothing could be clearer than that these two brothers intended with full heart and entire will to amalgamate into one undivided whole their business fortunes. It is unfortunately not the first time in the history of the human race that oneness of blood, which should have been the inseparable welding of mutual interests, turned out to be the dividing force which separated one brother from the other by a wider gulf than perhaps might have disjoined strangers. However, the philosophical aspect of the case is not before us.

We affirm, as being supported in every detail, the findings of fact and the conclusions of the law of the Chancellor and affirm the Decree. Costs to be paid by the appellant.