## Holst *v.* Butler, Appellant.

Argued April 22, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph S. Kleinbard,* with him *Walter I. Summerfield, Jr., Carlos Berguido, Jr.,* and *Kleinbard, Bell & Brecker,* for appellants.

*Thomas A. Galbally,* with him *John J. Sullivan,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, November 8, 1954:

The appeal is from a decree of a court of common pleas directing an accounting by two partners, directing payment of sums of money found to be due and ordering reassignment of certain patents. The complaint in equity was filed by two of the partners, plaintiffs. The answer and defense of the remaining two partners, the defendants, was that the transaction was illegal because three of the partners were officers and employes of the United States Government and the partnership was rendering service to contractors who were dealing, and had contracts, with the Government. As to one item defendants contended plaintiffs had no interest whatever. The court below decided that plaintiffs were not engaged in any illegal transaction against which defendants could defend and that plaintiffs were entitled, within defined limits, to a share of profits and royalties in the article questioned. The appeal followed.

Plaintiffs are William H. Holst and G. Russell Hersam. Holst was an officer in the United States Navy from March, 1943 to January 31, 1946. Hersam was a civilian employe of the Navy from May, 1942 until October 15, 1945. The defendants are two brothers, Robert W. and Edward T. Butler. Edward was an officer in the Navy from 1942 to 1945. Robert was not associated with the armed forces in either a military or civilian status. Plaintiffs, while stationed at the Naval Ordnance Laboratory, Silver Springs, Maryland, invented a chemical formulation and a method of applying it known, generally, as the "cocoon pack" process, consisting of the preparation and application of a plastic coating for the protection of aircraft, guns, turrets, machinery, etc. Plaintiffs applied for letters patent on this process. Defendant, Edward T. Butler,

met the plaintiffs while he was also stationed at the Naval Ordnance Laboratory. He subsequently interested his brother, Robert, the other defendant, in the invention. The Butler brothers met with the plaintiffs and entered upon discussion relating to the commercial exploitation of plaintiffs' invention. On January 24, 1945, the parties signed a writing agreeing:

"(1)   An organization will be formed which will offer Engineering Services.

"(2)   This Organization will be set up so that; (a) 24% Interest will be assigned to William H. Holst. (b) 24% Interest will be assigned to G. Russell Hersam. (c) 24% Interest will be assigned to Edward T. Butler. (d) 15% Interest will be assigned to Robert W. Butler. (e) 8% Interest will be assigned to R. Donald Weir.

"(3)   Any distribution of Profits shall be for the duration of the War and 92% shall be paid to Robert W. Butler who shall in turn redistribute to William H. Holst, G. Russell Hersam & Edward T. Butler, the amounts, less personal expenses and Income Taxes, those amounts paid to Robert W. Butler by virtue of the Interests so vested.

"(4)   Robert W. Butler will execute a new will and Testament which will leave to William H. Holst, G. Russell Hersam & Edward T. Butler their respective 24% Interests in the Corporation.

"(5)   The issuance or Transfer of the Stock in the Corporation shall be completed on the basis that;

"(1)   When the Patent or Patents, now pending, covering the 'Strippable Coating' are issued to William H. Holst & G. Russell Hersam, such Patents will be sold to the Organization in exchange for their respective Interests, 24%, of William H. Holst & G. Russell Hersam in the Organization, but irrespective of

any earnings of William H. Holst & G. Russell Hersam payable for their personal service.

/s/ R. W. Butler
/s/ W. H. Holst
/s/ Edward T. Butler
/s/ G. Russell Hersam."

It was found by the court below that the corporation contemplated in this memorandum was never formed, nor was any business activity ever conducted in connection with it. The *defendants*, however, prior to September 1, 1945, formed a partnership under the name of Butler and Company for the purpose of supplying engineering services. The plaintiffs were not informed and did not discover the existence of this partnership for some time. About September 1, 1945, the defendants entered into a contract with the R. M. Hollingshead Corporation to supply engineering services in connection with the manufacture of "cocoon pack" by Hollingshead on a large order placed by the United States Navy. Hersam, one of the plaintiffs, terminated his civilian employment with the Navy and commenced working on October 15, 1945, with the defendants at the plant of the Hollingshead Corporation.

On December 7, 1945, the parties entered into an agreement which provided:

"This agreement made between William H. Holst, G. Russell Hersam, Robert W. Butler, and Edward T. Butler embodies the distribution of accrued profits from the sale of Engineering service, royalty agreements, research and developments, and all other sources of revenue derived from the formulation, application, or use of vinyl polymers and/or co-polymers as essential solid constituents.

"All such transactions shall be made through Butler and Company and profits accrued thereto.

"It is further agreed that the respective interest of each party in these profits shall be share and share alike as long as it is mutually agreed that such a division is equitable.

"However, by majority consent the percentage of participation may be altered to meet changing conditions, and other alterations may be made in this agreement by majority consent by notifying all parties in writing of the intent to modify the agreement.

"However, profits that accumulate as the result of a royalty agreement, a basic development, or other sources of income that are derived from an initial transaction requiring no further effort to insure or perpetuate the contract on the part of any member or members of Butler and Company, shall be irrevocably fixed as an equal interest of all parties in these accrued profits.

"It is also agreed that should anyone of the group sever his association with Butler and Company he is bound for a period of one year from the date of his separation not to engage or be engaged in the development, manufacture, or sale of these materials.

Edward T. Butler<br>
G. Russell Hersam<br>
William H. Holst<br>
R. W. Butler

Witness:

Claire E. McFadden

12/7/45"

On the same day the plaintiffs agreed by separate writings to assign to Butler and Company all patents which may be issued to them. Plaintiff Holst was released from the Navy on January 31, 1946, and commenced working with the other plaintiff Hersam and the defendants in March, 1946. This relationship continued until January 15, 1948, when the defendants

terminated the association of the parties by written notice of dissolution. During this period the plaintiffs' work was restricted to that of a scientific and technical nature, while the defendants maintained the books and records of the business and completely controlled the receipts and expenditures of the funds derived from the several business ventures.

Since the defendants limit their defense in this appeal to the legality of the above agreements on the ground that they violate Federal statutes and are contrary to the public policy of this Commonwealth, it is unnecessary to relate any other of the business operations which occurred after the plaintiffs were separated from the Navy. It is the alleged conflict of interest arising from a supposed divided loyalty before separation from the Navy which the defendants insist vitiates any requirement on their part to account to the plaintiffs. Defendants deny plaintiffs are entitled to the relief asked because they contend plaintiffs are the other parties to illegal agreements.

A reading of the alleged agreement of January 24, 1945, discloses that this was merely a plan *for the future* which contemplated the subsequent incorporation of a company. No time is specified as to when the corporation was to be formed. The Chancellor found that the corporation was never formed and no business activity was ever conducted in connection with it. Whether or not this agreement is legal or illegal is of no consequence since the plaintiffs are not relying on it as a basis for the relief sought. They are seeking an accounting from September 1, 1945.

The court below found that the enterprise of plaintiffs and defendants was a partnership. This conclusion was reached without reliance on either the January 24, 1945 or the December 7, 1945 agreements. These agreements are mere reflections of the relation-

ship intended by the parties. Upon this and other evidence the court correctly found that the parties were partners and that defendants must account for the receipt of funds received by them as partners. Written articles of agreement are not necessary to prove a partnership. Such relationship can be established by verbal agreement. Moreover, the existence of a partnership may be implied from the circumstances: *Mattei v. Masci*, 351 Pa. 93, 40 A. 2d 265; *Miller v. Miller*, 370 Pa. 520, 88 A. 2d 784.

It is true that, generally, a court will not lend its aid to the enforcement of an illegal contract, but will leave the wrongdoers where it finds them: *Tucker v. Binenstock*, 310 Pa. 254, 165 A. 247; *Halkias v. Liberty Laundry Company, Inc.*, 361 Pa. 475, 64 A. 2d 800; *Dippel v. Brunozzi*, 365 Pa. 264, 74 A. 2d 112. A promisor is excused from performance when a counter promise which is the *consideration for his own promise is repudiated for illegality*: *Deibler v. The Chas. H. Elliott Co.*, 368 Pa. 267, 81 A. 2d 557. But if refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed: *Philadelphia v. Rosin's Parking Lots, Inc.*, 358 Pa. 174, 56 A. 2d 207, and the many cases cited therein.

In scrutinizing this second agreement it is evident that its purpose was to provide for the distribution of profits and other revenue from the sale of engineering services, royalty agreements, etc., through Butler and Company. That being its sole purpose it is impossible to discover how this agreement violates the four sections of Title 18 of the United States Code Annotated as appellants contend. It does not violate 18 U.S.C.A. Sec. 202 (Supp. II, 1949.) which prohibits an officer of the United States from asking for or accepting a bribe.

There is no evidence that either plaintiff asked for or received any gratuity in the nature of a bribe in connection with the R. M. Hollingshead Corporation contract. In fact the Hollingshead contract was made by the *defendants* several months *before* this agreement was signed by all these litigants. There can be, then, no connection between the Hollingshead contract and the agreement of December 7, 1945. The same reasons apply to defendants' contentions in connection with the other three sections of the United States Code Annotated: 18 U.S.C.A. Sec. 216 (Supp. II, 1949), which forbids an official to receive any money or property for procuring or aiding to procure any contract from the United States; 18 U.S.C.A. Sec. 281 (Supp. II, 1949), which forbids an official to receive compensation for rendering service in relation to any proceeding, contract, claim or controversy, in which the United States is a party, before any bureau, officer, or any civil, military or naval commission; and 18 U.S.C.A. Sec. 434 (Supp. II, 1949) which forbids an officer or agent of any corporation, association or firm directly or indirectly interested in the pecuniary profits or contracts of any corporation, association or firm, to be employed as an officer or agent of the United States for the transaction of any business with such corporation, association or firm. Neither plaintiff, the record discloses, procured a contract from the United States, received any money or property for procuring a contract, received compensation for rendering any of those enumerated services, nor were officers or agents of any corporation, etc., transacting business with the United States Government. Aside from the fact that there is no basis in this record for defendants' assertions, all of the illegal acts in connection with the Hollingshead contract which the defendants say nullify the December 7, 1945,

agreement were completed and finished *long before this agreement was signed.*

The plaintiffs have not violated any common law standard or public policy. There was nothing illegal or immoral in making preparations to engage in business for profit at the end of the Second World War. This is especially true of these plaintiffs who had developed a process which has saved great sums by preservation of material. In the making of these arrangements the plaintiffs did not breach any duties of loyalty.

The defendants throughout their brief have attempted to establish the illegality of the agreement of January 24, 1945, by insinuation and then attach the stamp of illegality to all the subsequent business dealings. This maneuver is then buttressed by the argument that the agreement of December 7, 1945, is either a continuation of the earlier illegal agreement or is itself illegal. The fallacy is that the defendants fail to realize that the earlier agreement is nothing but a statement of plans which failed to materialize. The only intervening acts for which it might be contended that the plaintiffs could possibly be held to be estopped from seeking relief from defendants are those acts allegedly in connection with the procurement of the Hollingshead contract. These were performed several months *before* the signing of the second agreement. The evidence shows *defendants* and not plaintiffs made the contract with Hollingshead.

Defendants contend that because one of the defendants was an officer in the Navy, defendants' contract with Hollingshead was illegal and that plaintiffs were aware of its illegality. Defendants, therefore, insist that when plaintiffs seek to compel defendants to account for illegal profits, plaintiffs are precluded from seeking relief in equity because of unclean hands. But this principle is not applicable to the present case. Mr.

Justice (later Chief Justice) HORACE STERN said, in *Vercesi v. Petri*, 334 Pa. 385, 5 A. 2d 563, where one partner sought an accounting from the other partner and the latter defended on the ground that the omission of plaintiff's name from the title to the partnership property was a fraud on creditors, (p. 388): ". . . As to the partnership the concealment of his name was a collateral incident which did not vitiate the status of the partnership itself or so taint it as to preclude plaintiff from obtaining an accounting from defendant. One of the limitations of the doctrine of coming into equity with unclean hands is that the wrongdoing of the plaintiff must have been in reference to the very matter in controversy and not merely remotely or indirectly connected therewith: Comstock v. Thompson, 286 Pa. 457, 461; Delaware, Lackawanna & Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Railway Co., 289 Pa. 131, 138; Valley Smokeless Coal Co. v. Manufacturers' Water Co., 302 Pa. 232, 238. . . ." Many other cases have likewise held that the doctrine of unclean hands applies only where the plaintiff's wrongdoing directly affects the equitable relations *existing between the parties*: *Robinson v. Goldberg*, 331 Pa. 401, 200 A. 4; *Dales v. Muir*, 351 Pa. 187, 40 A. 2d 476; *Goldberg v. Goldberg*, 375 Pa. 78, 99 A. 2d 474; *Walacavage v. Walacavage*, 168 Pa. Superior Ct. 334, 77 A. 2d 723.

The appellants further contend that the plaintiffs are not entitled to share in the income from the "mastic" operations. The "cocoon pack" process consists of a plastic coating for the protection of metal such as aircraft, guns, machinery, etc. "Mastic" is a bitumastic application over the "cocoon pack" to render it more waterproof and durable. In resisting liability for accounting to plaintiffs for the use of "mastic" defendants contend that the written agreement of

December 7, 1945, does not include the development of "mastic", that there is no evidence which would indicate that the parties were co-owners of the "mastic" formula, that there is no evidence that the plaintiffs participated on an equality with the defendants in the management of that business, or that there was any agreement to share in the profits or losses. The Chancellor, however, made findings to the contrary. Findings of fact made by the Chancellor, affirmed by the court in banc and supported by competent evidence, have the force and effect of a jury's verdict. The Chancellor found that the parties extended their operations in April or May of 1946 to the development of the "mastic" product and that the plaintiffs rendered chemical engineering and technical services in connection therewith similar to those performed in connection with the cocoon plastic. The defendants also had, as with the other process, handled all the business negotiations with reference to mastic. No express agreement, written or oral, was found to exist whereby the plaintiffs were to share in the profits from mastic. There is evidence that neither of the defendants performed any technical or scientific work with respect to the mastic process, but that plaintiff Holst spent about ninety per cent. of his time on this process and plaintiff Hersam spent a considerable amount of his time preparing specifications and directing demonstrations thereof. Since these services were of the same character as had been rendered in connection with the cocoon process, the conclusion of the court below that there was an extension of the partnership to the new activities is a compellable inference which will not be disturbed.

The decree appealed from is affirmed at the cost of appellants.