## Patterson Estate

*Cobau & Berry*, for petitioner.

*Matthews & Matheny* and *Caldwell & McFate*, for administrators.

BRAHAM, P. J., February 1, 1955.—Two proceedings are before the court at this time. In the orphans' court, Elizabeth F. Miller, grand niece and one of the heirs of William L. Patterson, deceased, has filed a petition under section 324 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §§320, 323, for increase in the bond given to the administrators of his estate. In a proceeding in the common pleas at March term, 1955, no. 45, the guardian for William L. Patterson, a feeble-minded person, asks leave to advance to the administrators the sum of $80,000 to be used to pay Pennsylvania inheritance tax at discount and some other charges. The two hearings have been consolidated.

William L. Patterson died January 1, 1955, and on January 6, 1955, letters of administration were issued to William Patterson and Charlotte Rose. When the letters were issued the register of wills required bond in only the sum of $1,000 although he knew, according to the evidence, that the estate was of the value of $500,000. The actual order of the register was as follows:

"January 6, 1955, after due consideration of applications of William Patterson, Charlotte Rose and Elizabeth F. Miller for letters of administration in the Estate of William L. Paterson, deceased, late of New Castle, Lawrence County, Pennsylvania, letters of administration are hereby granted to the nearest of kin, William Patterson and Charlotte Rose. Said letters to be issued upon the filing of a bond with surety in the sum of $1,000 at this time. An additional surety bond in the amount of one and one-half (1½) times the amount of the total assets in the estate will be required when the assets of the estate are turned over to the administrators."

The unusual feature of the case is that for many years before his death William L. Patterson had been

adjudged incompetent mentally and his assets were in charge of the Union Trust Company of New Castle, Pa., as guardian. No accounting has as yet been filed and none of the assets has as yet been turned over to the administrators.

In this situation plaintiff claims that when the register knows the probable amount of the personal estate he must at the time he grants letters require such bond as will protect the estate. Respondents, the two administrators, contend that, since the assets were already under control of a guardian, there was no probability that they would be distributed by the guardian to the administrators without the giving of bond.

On the naked question of law petitioners are right. The language of the statute is as follows:

"Except as hereinafter provided, before letters shall be granted to any personal representative, he shall execute and file a bond which shall be in the name of the Commonwealth, with sufficient surety, in such amount as the register considers necessary, having regard to the value of the personal estate which will come into control of the personal representative": Act of April 18, 1949, P. L. 512, sec. 321, 20 PS §§320, 321.

The danger of allowing the register to issue letters for only a nominal amount on the basis of oral representations that the assets will not actually be received by the administrators for some time is at once apparent. The letters, once issued, are absolute in form. They authorize the fiduciary to take custody and control of the assets of the decedent wherever they are in the Commonwealth. A memorandum on the register's docket to the effect that more bond is to be given when more assets are received would be of no avail if an administrator collected assets by virtue of his letters and then misappropriated the assets. Furthermore,

the register does not have the plenary powers of the orphans' court to enforce such a decree.

Plaintiff goes further in her contention. She contends that once the register has exercised his discretion and fixed bond in the estate his power is, in a sense, functus officio, and that only the orphans' court has the power to require more bond. This contention cannot be maintained. The known practice of registers of wills is to require additional bond when more assets are discovered. Any other arrangement would accord to the register only a wooden, unyielding type of authority, whereas the administrator is expected to act wisely and prudently to conserve the assets of the estate: Stuckert Estate, 82 D. & C. 363.

The last observation is the controlling one. There is no magic in a bond; its sole function is to guarantee to creditors and beneficiaries that the assets of the dead man will be available when they are called for. If there is no present necessity for this protection there is no need to spend the assets of the estate merely to be logical about the giving of bond. The controversy in the present case is pointed up by the contention of the administrators that a bond to secure the value of $500,000 would cost about $4,500 per year. This they contend they are in a position to save for the estate.

Recognizing the potentially dangerous nature of the discretion on the part of the administrators which is here contended for, the court is nevertheless in a position in the case at bar to help effect a substantial economy in the estate without sacrificing the interests of plaintiff and other parties in interest. Decedent has been deprived of the right to manage his own affairs since 1939. Obviously therefore, no debts save minor ones for his maintenance have been created during the last 25 years. All his assets are now in the control of the court.

Fortunately the estate of a person of feeble mind is one particularly under the control of the court: Interboro Bank & Trust Company of Prospect Park, Guardian, 359 Pa. 315. This is true of a committee in lunacy under the Act of June 13, 1836, P. L. 589, in which case the committee was said to be a mere bailiff for the court: Black's Case, 18 Pa. 434. The guardian of a feeble-minded person under the Act of May 28, 1907, P. L. 292, had the same powers as a committee: Riebel's Estate, 321 Pa. 145; Davidson's Estate, 323 Pa. 113, 116; In re Morison, 37 D. & C. 694. The common pleas has exclusive jurisdiction of the estate and the guardian: Gerlach's Estate, 127 Pa. Superior Ct. 293.

It is not necessary for the judge in the orphans' court to take judicial notice of what he is doing as judge of the common pleas because in the consolidated hearing all is before him. Without developing a split personality the judge may, however, take notice of the circumstances that considerable time may elapse before the account of the guardian is stated, audited and settled. The bond premium for this period may be saved, since the court of common pleas has the power to direct the guardian, its bailiff, not to make any distribution without order of court.

Accordingly the interests of justice will be served by decreeing in the orphans' court that the existing $1,000 bond will suffice for the present and by decreeing in the common pleas that no distribution shall be made by the guardian to the administrators until the court so directs and until bond is given by the administrators to secure the fund one and one-half times the amount of the fund with surety to be secured by the register. To this end we make the following

### Order

Now, February 1, 1955, the prayer of the petition is granted and William Patterson and Charlotte Rose,

administrators of William L. Patterson, deceased, are directed to give additional bond in an amount equal to approximately one and one-half times the funds distributed to them by Union Trust Company of New Castle, Pa., pursuant to orders of the court of common pleas. They are directed not to receive the funds until such bond has been given with surety to be approved by the register of wills.